**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| WARREN PARTELOW, )<br> Plaintiff )<br>v. )<br> )<br>COMMONWEALTH OF MASSACHUSETTS, )<br>HAMPDEN COUNTY CORRECTIONAL )<br>CENTER, MICHAEL ASHE JR., Sheriff of )<br>Hampden County; THOMAS CONKLIN, )<br>Superintendent of Health Services of )<br>Hampden County Correctional Center, CPT. )<br>WALKER, CPT. SADDI, and certain JOHN DOES, )<br> Defendants ) | Civil Action Number:<br><br>03-30294-MAP |

**MEMORANDUM IN OPPOSITION TO**
**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**
**AND**
**REQUEST FOR ORAL ARGUMENT**

NOW COMES the Plaintiff Warren Partelow and, pursuant to Rule 56 of the Federal

Rules of Civil procedure, submits this memorandum of law in opposition to the Defendants

Commonwealth of Massachusetts, Hampden County Correctional Center's Motion for Summary

Judgment. This opposition consists of the plaintiffs' statement of material fact supported by

discovery and legal argument.

**INTRODUCTION**

The Plaintiff Warren Partelow (hereinafter "Plaintiff") claims to have been subjected to

unlawful and discriminatory treatment while an inmate at the Defendants, Commonwealth of

Massachusetts Hampden County Correctional Center et al. (hereinafter "Defendants").

1

Specifically, Plaintiff asserts that he is a disabled person, a left leg amputee, and as such was entitled to protection and accommodations while a prisoner under the Americans with Disabilities Act (ADA), 42 U.S.C. §12101 et seq., the Rehabilitation Act (RA), 29 U.S.C. §§ 706, 791 - 794, Massachusetts General Law, chapter 272 §98 and Article 114 of the Amendments to the Massachusetts Constitution. While incarcerated Mr. Partelow was denied the use of his adaptive equipment including a "shinker" and his prosthesis and the use and/or access to handicap facilities. During the plaintiff's 2001 incarceration, the showers, to which the plaintiff was assigned, had neither handrails and/or other accessories necessary to equip the shower for handicap use. Mr. Partelow was told by correction official that he would have to use the "regular" shower facilities. Accordingly, while attempting to use these facilities, Mr. Partelow fell on seven (7) separate occasions scraping his the stump of his residual limb, reopening scar tissue on the residual limb, causing extreme pain and injuring his back.

In addition to asserting that the Defendant's actions and/or inactions violated the plaintiff's rights under the ADA, the RA, M.G.L. c. 272 §98 and Article 114 of the Amendments to the Massachusetts Constitution; the plaintiff asserts that the Defendant's actions violated his state and federally protected civil rights. The plaintiff also claims that one manner in which the Defendant attempted to provide accommodations was negligent and caused the plaintiff injury and pain.

## PLAINTIFF'S CONCISE STATEMENT OF FACT

Pursuant to Local Rule 5.1, Plaintiff attaches and herein incorporates to this Opposition to Defendants' Motion for Summary Judgement a Statement of Facts supported by the record evidence.

2

1.      The plaintiff is an left leg amputee. (See: Exhibit 1: Plaintiff's Verified Complaint ¶14). For purposes of the state and federal laws he should be considered a qualified disabled person during all relevant times;

2.      After a determination that the plaintiff violated his probation, the plaintiff was sentenced to serve a nine (9) month sentence at the Defendants' facility. The plaintiff began to serve this sentence on January 2, 2001. The plaintiff's sentence at the Defendant facility concluded on May 22, 2001.(See: Exhibit 1, Plaintiff's Verified Compliant ¶11;  Exhibit 2, Affidavit of Robin M. Powell ¶2)  The Defednant served one hundred forty one (141) days at the defendant's facility;

3.      During almost his entire incarceration the plaintiff was denied the use of adaptive equipment that would have allowed him more mobility and greater independence.  Specifically, the plaintiff was denied the use of a "shinker" device.  Such a device would have allowed the plaintiff to wear his prosthetic leg despite suffering swelling. The plaintiff was also directly denied the use of his prosthetic leg by the defendant's staff (See: Exhibit 3, Plaintiff Deposition Transcript pg. 14, line 11 through pg. 18, line 22);

4.      The plaintiff was told by defendants' representatives that he would not be allowed the "shinker" devise because he could hang himself with it. (See: Exhibit 3, Plaintiff Deposition Transcript pg. 17, line 22 through pg. 18, line 6) At the time of the plaintiff's intake, he was assessed a low risk for suicide. (See: Exhibit 4, Plaintiff Mental Health Evaluation);  The defendants' representative told the plaintiff he could not have his prosthetic leg because he could use it as a weapon. (See: Exhibit 3, Plaintiff Deposition Transcript pg. 17, line 14 through line 21).

5.      During the plaintiff's incarceration the defendants were engaged in remodeling the

3

facility, especially the shower facilities. During the plaintiff's incarceration, the defendant offered handicapped accessible showers in the "new man" unit (See: Exhibit 3, Plaintiff Deposition Transcript pg. 24, line 15 through line 21), in the "medical" unit (See: Exhibit 3, Plaintiff Deposition Transcript pg. 59, line 18 through line 21), and in the "maximum security C-unit." (See: Exhibit 3, Plaintiff Deposition Transcript pg. 63, line 8 through line 23) There were no handicapped accessible showers in the "B" tower where the plaintiff was assigned the majority of his incarceration (See: Exhibit 3, Plaintiff Deposition Transcript pg. 31, line 11 through line 22) ;

6.    During the 141 days that the plaintiff was incarcerated at the Defendant's facility, the defendants provided the plaintiff accessible showering on 29 occasions (23 days in the medical unit, 3 days in the "new man" unit, and 3 days in "C" Tower's maximum security unit.) (See: Exhibit 3, Plaintiff Deposition Transcript pg. 25, line 8 through line 15; and Exhibit 2, Affidavit of Robin M. Powell, ¶¶ 5 through 8, and 16 )

7.    The plaintiff made numerous complaints about he lack of handicapped showering facilities. On January 9, 2001, the plaintiff filed an incident report regarding unsafe showering facilities (See: Exhibit 5, January 9, 2001 Inmate Request), and on February 6, 2001, the plaintiff filed a grievance form asserting that his rights as a handicapped person were being violated because of the lack of handicapped accessible showers. (See: Exhibit 6, February 6, 2001 Grievance Form);

8.    The plaintiff also made numerous verbal complaints about the lack of accessible showers, but was discouraged and intimated from pursuing such complaints by some of the defendants' correctional officers. The plaintiff was informed that he was a trouble maker, that he complained

4

too much about being a handicapped person and that such complaints weren't permitted in the pod. (See: Exhibit 3, Plaintiff Deposition Transcript pg. 38, line 17 through pg. 39, line 9) The plaintiff was denied access to writing instruments so as to prevent him from documenting his complaints. (See: Exhibit 3, Plaintiff Deposition Transcript pg. 39, line 15 through pg. 40, line 22, and pg. 42, line 5 through 9)

9.     After complaining directly to Sheriff Ashe about the lack of handicapped showers in the "A" unit on January 10, 2001, the plaintiff was transferred to the "C" unit on the same day. (See: Exhibit 2, Affidavit of Robin M. Powers ¶¶ 5,6). In the "C" unit the plaintiff was locked down tewnty-four hours a day, seven days a week. He was denied all privileges including visitations, telephone calls, access to the day room, access to socialize with inmates and access to a television set. (See: Exhibit 3, Plaintiff Deposition Transcript pg. 26, line 8 through line 20, and pg. 89, line 24 through pg. 91, line 20). The plaintiff considered the transfer to "C" unit as punishment for his complaints (See: Exhibit 3, Plaintiff Deposition Transcript pg. 96, line 18 through pg. 21), rather than a legitimate and reasonable accommodations for his disability. At the plaintiff's request he was returned to the "A" unit on January 12, 2005 (See: Exhibit 2, Affidavit of Robin M. Powers, ¶ 8).

10.     Upon his return to the "A" unit, the plaintiff was allowed to shower in the medical unit's accessible shower. The plaintiff showered in the medical unit 15 times between January 13, 2001 and February 1, 2001. (See: Exhibit 2, Affidavit of Robin M. Powers, ¶¶ 9, 16). These showers stopped. On February 6, 2005, the plaintiff penned a grievance form asserting that the lack of handicapped accessible showers violated the A.D.A. (See: Exhibit 6). On February 9, 2001, the plaintiff was allowed to resume showering in the medical unit. The plaintiff showered 8 times

between February 9, 2001 and February 16, 2001. (See: Exhibit 2, Affidavit of Robin M. Powers,

¶12, 16). There is no record of the plaintiff showering in the medical unit after February 16,

2001. The plaintiff remained incarcerated at the defendant's facility until May 22, 2001. (See:

Exhibit 1, Plaintiff's Verified Compliant ¶11; Exhibit 2, Affidavit of Robin M. Powell ¶2).

11.     During the entire period of the plaintiff's 2001 incarceration, the medical unit was equipt

with a handicapped accessible shower which included a slip-proof shower chair.

(See: Exhibit 3, Plaintiff Deposition Transcript pg. 59, line 18 through line 21 and referenced

photos in "exhibit 5")

12.     The defendants did provide the plaintiff with a plastic/resin chair to use while taking

showers in the "A" pod. This chair was not a "shower chair," and the plaintiff pointed out to the

defendants' representatives that he "can't use a chair like that;" (See: Plaintiff's Deposition

Transcript pg. 22, line 18 through line 23)

13.     The plaintiff fell in the shower seven (7) times. (See: Plaintiff's Deposition Transcript pg.

21, line 7 through line 8). Each time that the Defendant fell he experienced extreme pain (See:

Plaintiff's Deposition Transcript pg. 21, line 16 through pg. 22, line 23).

## ARGUMENT

### SUMMARY JUDGMENT STANDARD

Summary Judgment will be granted if "there are no genuine issues of material fact" and

"the moving party is entitled to judgement as a matter of law" Fed. R. Civ. P. 56(c). *See:* Magee

v. United States, 121 F.3d 1, 3 (1st Cir. 1997).   At this point in the proceedings, the court must

resolve any conflicts in the summary judgment materials, and make all logically permissible

inferences, in plaintiff's favor" Willitts v. Roman Catholic Archbishop of Boston, 411 Mass.

202, 203 (1991); *See also* <u>LeBlanc v. Great American Insurance Co.</u>, 6 F.3d 836 (1st Cir.,

1993)("we, like the District Court, are obliged to review the record in the light most favorable to

the non-moving party, and to draw all reasonable inferences in the non-moving party's favor").

The Defendants' Motion for Summary Judgment should be denied because genuine issues

of material fact exist requiring the case to be presented to a jury.

## ARGUMENT

## A. THE DEFENDANT'S MOTION TO DISMISS COUNTS I, II, III, AND IV SHOULD BE DENIED INASMUCH AS THE COUNTS ALLEGE VIOLATIONS OF THE ADA, THE REHABILITATION ACT, MASSACHUSETTS LAW AND AMENDMENTS TO THE MASSACHUSETTS CONSTITUTION

To state a claim for a violation of Title II, a plaintiff must allege (1) that he is a qualified

individual with a disability; (2) that he was either excluded from participation in or denied the

benefits of some public entity's services, programs, or activities or was otherwise discriminated

against; and (3) that such exclusion, denial of benefits, or discrimination was by reason of the

plaintiff's disability. <u>Parker v. Universidad de Puerto Rico</u>, 225 F.3d 1, 4 (1st Cir. 2000). The

Plaintiff meets and exceeds this standard.

    (1)    <u>The Plaintiff is a qualified individual with a disability.</u>

For purposes of their motion, the Defendants do not dispute that, as a left leg amputee,

the Plaintiff is a qualified, disabled individual for purposes of the ADA and the RA. (See

Defendant's memorandum, page 10, ¶ 2, line 14-16). In regard to Massachusetts law, courts

have interpreted the term "handicapped" in Article 114 of the Amendments of the Massachusetts

Constitution to have essentially the same meaning as the term "disability" as used in the RA,

"i.e., a 'handicapped' individual for purposes of Art. 114 is an individual who has 'a physical or

mental impairment that substantially limits one or more major life activities." Shedlock v. Dept.

of Corr., 442 Mass. 844, 852 (2004). Accordingly, as a left leg amputee the Plaintiff is a

qualified, disabled individual.

    (2)    The Plaintiff was excluded from participation in or denied the benefits of a public entity's services, programs, or activities or was otherwise discriminated against.

        a)    Public entity's services, programs, or activities

Under Title II of the ADA, prisons and jails are "public entities." McNally v. Prison

Health Services, 46 F.Supp.2d 49, 57-58 (D. Maine 1999), also see Pennsylvania Dept. Of

Corrections v. Yeskey, 524 U.S. 206, 118 S.Ct. 1952, 141 L.Ed.2d 215 (1998). The Department

of Justice has further provided that "benefits" under the ADA includes "provision of services,

financial aid, or disposition (i.e handling, decision, sentencing, confinement, or other prescription

of conduct). 28 C.F.R. § 42.540." McNally v. Prison Health Services, 46 F.Supp.2d at 58. The

commentary makes clear that, "[t]he general regulatory obligation to modify policies, practices,

or procedures requires law enforcement to make changes in policies that result in discriminatory

arrests or abuse of individuals with disabilities. 28 C.F.R. § 35, App. A, Subpart B." Id.

In McNally the Court found that the Defendant's prescription service . . . is a program or

service of Cumberland County Jail. *Accord* Gorman v. Bartch, 152 F.3d 907, 912 (8th Cir. 1998)

(finding that 'transportation service to the police station' was a service of the police within the

meaning of the ADA.) Id. Similarly, providing inmates with showers is a service within the

meaning of the ADA. This argument is also supported by the deposition testimony of Plaintiff's

expert, Dr. Charles Newman, who states that . . . "[t]here is an American Correctional Standard

that [inmates] shower three times a week. (See Exhibit 7, Deposition of Charles L. Newman, pg.

83, lines 5-6). Accordingly, providing inmates with showers is a required and protected service.

      b)    <u>The Plaintiff was excluded from participation or denied benefits</u>

    The ADA, the RA, M.G.L. c. 272, and Art. 114 all prohibit the same conduct: disabled

persons may not be "excluded from participation in or be denied the benefits of services,

programs or activities, and they may not be subjected to discrimination" in violation of 42

U.S.C. § 12132; 29 U.S.C. § 794; M.G.L. c. 272; and Art. 114. <u>Shedlock v. Dept. of Corr.</u>, 442

Mass. at 854. In <u>Shedlock</u> the Massachusetts Supreme Judicial Court took exception to the

lower court's interpretation, to the effect that a violation could only be premised on conduct that

resulted in a complete exclusion from programs or total denial of benefits, as being overly

narrow. <u>Id</u>. Justice Sosman continues:

> At some level, the difficulties experienced in attempting to access programs and services become so great - - so laborious, so painful - - that a plaintiff's access has functionally been denied, even if the plaintiff could, at least in theory, get to and from the program or services. The ADA, the RA, and Art. 114 also prohibit 'discrimination,' and deliberately requiring a plaintiff to endure unnecessary hardship in order to access a program or service, when that hardship could easily be eliminated by a reasonable accommodation, can amount to a form of 'discrimination' against that plaintiff." <u>Id</u>. at 854-855.

    That is the case in this instance. The hardships and injuries that the Plaintiff avers that he

suffered could have been easily eliminated by allowing him access to the handicap shower in

Health Services or other locations in the jail.

    Here the Defendant claims that, "On January 27, 2001, Partelow refused to shower in the

Department of Health Services." (See Defendant's Concise Statement of Material Facts, ¶ 22).

In support of this assertion the Defendant refers the Court to its Appendix, page 317 - Health

Services 2001 Diary, however, nothing in this entry indicates that the Plaintiff refused to shower

in Health Services. Clearly, the entry which refers to the Plaintiff, Warren Partelow, does not

state that Mr. Partelow refused to shower in the Department of Health Services, but indicates a

change of dressing bandage. This is a contested issue of fact which requires conflicting evidence

to be presented to a finder of fact.

Further, the Defendant argues that it made a "good faith effort to provide a reasonable

accommodation to Partelow while the showers at the Hampden County Correctional Center were

being renovated." However, instead of the easiest solution (i.e. allowing the Plaintiff access to

the handicap showers in the Health Services Department or elsewhere on a permanent basis) the

Plaintiff avers in his Verified Complaint that the Defendant:

> .... transferred the Plaintiff to Cell Block C3 which was a "lock down" pod. In a "lock-
> down" pod all privileges suspended including the right to visitation. Within a few days
> handicap accessories were removed from this shower facility. The Plaintiff was told that
> he would have to use the "regular" shower facilities The Plaintiff was transferred back to
> "Tower B." The Plaintiff was allowed to shower at the infirmary for only a few days
> Again, the Plaintiff was told by the Defendants that he would have to use the "regular"
> shower facilities. [and given a plastic chair to assist him]. The Plaintiff protested and
> indicated it was dangerous for him to do so. The Plaintiff fell on three (3) separate
> occasions scraping his the stump of his residual limb, reopening scar tissue on the
> residual limb and injuring his back. The Plaintiff complained and spoke with Sheriff
> Ashe. The Plaintiff told Sheriff Ashe of his injuries sustained  while attempting to use
> the "regular" shower facilities. Captain Saddi told the Plaintiff he had no right to use
> [infirmary] facilities. The guards refused to give the Plaintiff paperwork to file a
> complaint.

See:  Exhibit 1, Plaintiff's Verified Complaint, ¶¶ 20 - 32

More specifically, the Plaintiff was given a plastic chair to assist him in using the regular

showers and "that's how I fell." (See Exhibit 3, Plaintiff's Deposition Transcript, page 61, line

8). As stated by Plaintiff's expert, "The issue is not whether [handicapped showers] were

available anyplace; it's whether there was an acceptable unit available - - and there was. It was in

10

the health unit." (See Exhibit 7, Deposition of Charles L. Newman, page 77, lines 6 - 9).

Further, Plaintiff's expert, Dr. Newman, was questioned by Defendant's counsel under

oath as follows:

Q:     Do you agree that there was at least an attempt made by the correctional staff to
       accommodate Mr. Partelow's handicap?

A:     I think their initial attempts were rather short-sighted and resulted in injury to Mr.
       Partelow.

Q:     I understand that you're not satisfied with the attempt but would you at least agree
       with me that the correctional staff made attempts to accommodate him?

A:     If they do something wrong, that represents an attempt to satisfy, is that the
       implication?

Q:     I understand that it's you opinion that their attempts were insufficient, is that
       correct?

A:     I would say that beyond being insufficient, they were incorrect.

See Exhibit 7, Deposition of Charles L. Newman, page 90, lines 8 - 24

At best the Defendants provided accessible showering facilities on 29 days out of the 141

days that plaintiff was incarcerated. Such a limited provision of accommodation precludes

summary judgement.[1] Accordingly, there is a genuine issue of material fact (inter alter) whether

---

[1] *See* Shotz v. Cates, 256 F.3d 1077, 1080 (11th Cir. 2001) (violation of ADA can occur
even where plaintiff is not "completely prevented from enjoying a service, program, or activity");
Bonner v. Lewis, 857 F.2d 559, 563-564 (9th Cir. 1988) (claim by deaf mute prisoner that
communication by means of telecommunication device and inmate interpreters was "extremely
difficult and inadequate" sufficed for RA claim); Schmidt v. Odell, 64 F.Supp.2d 1014, 1033 (D.
Kansas 1999) ("fact that plaintiff was actually able to use most of the jail services does not
preclude his [ADA and RA] claim in light of the fact he was able to do so only by virtue of
exceptional and painful exertion which was contrary to a physician's instructions"). Id. at 854-
855.

the Defendants efforts to accommodate the Plaintiff's disability were reasonable, whether it was foreseeable that the Plaintiff would suffer injury and whether the Defendant's actions or inactions towards the Plaintiff were indifferent.

(3)     The Plaintiff suffered a denial of benefits, or discrimination by reason of the Plaintiff's disability.

In this case Plaintiff has retained an expert in jail management and administration . Dr. Charles Newman's conclusions are as follows:

> Having examined in depth the pleadings, discovery and medical records provided to me, in my professional opinion, the Massachusetts Department of Corrections, the Hampden County Correctional Facility and certain of its personnel violated Mr. Partelow's rights under the ADA and possibly other civil rights statutes. His request for appropriate handicap resources in the bathing area were ignored, partially provided and then terminated without explanation, or fulfilled in a manner which was dangerous and inappropriate (chair), which resulted in injuries to Mr. Partelow.

See: Exhibit 8: Dr. Charles L. Newman's Report in the matter of *Partelow v. Massachusetts Department of Correction*

Pursuant to Parker v. Universidad de Puerto Rico, the Plaintiff has demonstrated and discovery supports that (1) Plaintiff is a qualified individual with a disability; (2) that he was either excluded from participation in or denied the benefits of some public entity's services i.e. access to handicapped shower facilities or was otherwise discriminated against; and (3) that such exclusion, denial of benefits, or discrimination was by reason of the plaintiff's disability. Parker v. Universidad de Puerto Rico, 225 F.3d 1, 4 (1st Cir. 2000). According, a genuine issue of material fact exists and discovery supports Plaintiff's claims that the Defendants violated the ADA, the RA, and Massachusetts law by denying the Plaintiff reasonable access to handicapped

12

shower facilities and the Defendants efforts were unsafe and lead to the Plaintiff suffering injury.

As such Defendant motion for summary judgment on this issue should be denied.

## B. THE DEFENDANT'S MOTION TO DISMISS COUNTS V, VI, AND VII SHOULD BE DENIED INASMUCH AS THE COUNT ALLEGES VIOLATIONS OF 42 U.S.C. §§ 1983 AND 1988 AS WELL AS MASSACHUSETTS CIVIL RIGHT ACT, AND 42 U.S.C. §§ 1985 AND 1986

### 1.    An Inmate Is Entitled To Protection From Physical Injury And To Proper Treatment For Injuries Sustained While In the Custody Of The Commonwealth.

Section 1983 creates a cause of action against those who, acting under color of state law,

violate federal law. McNally v. Prison Health Services, 46 F.Supp.2d at 53. Additionally, the

Supreme Court has recognized that deliberate indifference on the part of prison staff to the

serious medical needs of an inmate can constitute cruel and unusual punishment under the eighth

amendment. Estelle v. Gamble, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). A plaintiff

must satisfy two elements to present a viable claim: he must show a serious medical need, and he

must prove the defendant's purposeful indifference thereto. Sires v. Berman et al., 834 F.2d 9, 12

(1987).

Serious Medical Need

In this case the Plaintiff has shown that he had a serious medical need.  It is undisputed

that the Plaintiff is a qualified, disabled person, left leg amputee, within the meaning of every

statute protecting disabled persons from discrimination.

Deliberate Indifference and Summary Judgment

The Plaintiff was subject to deliberate indifference by the Defendants.  Because the

element of "deliberate indifference" by definition requires a subjective inquiry, courts are

13

cautious in granting summary judgment. Dias v. Vose, 865 F.Supp. 53, 57 (1994). The difference between situations presenting issues of triable fact and those warranting summary judgment is often a matter of degree. Id. In Rogers v. Evans, 792 F.2d 1052 (11th Cir. 1986), "[t]he Court found that the 'evidence could permit an inference . . . that [decedent] suffered pain and extreme distress' as a result of the doctor's 'gross incompetence." Id. at 58.

The Court acknowledged that while mere negligence or medical malpractice has no constitutional dimension, "medical care so inappropriate as to evidence intentional maltreatment or a refusal to provide essential care violates the eighth amendment." Id. In this case the Defendants failure to provide the Plaintiff access to handicapped showers violates the Defendant's obligation to provide essential care. After the Plaintiff had suffered one accident and injury, the Defendant should have recognized that the Plaintiff should have been allowed access to the handicapped shower facilities that were available in the Health Services Department. Defendant's inaction should permit this Court an inference that the Plaintiff suffered pain and extreme distress and that the Plaintiff suffered as a result of the Defendants inaction and indifference to Plaintiff's disability.

In order to establish a violation of the Eighth Amendment, a prisoner must show "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical need." Miranda v. Munoz, 770 F.2d 255, 259 (1st Cir. 1985) (quoting Estelle v. Gamble, 429 U.S. 97, 106, 97 S.Ct. 285, 292, 50 L.Ed.2d 251 (1976))." Dias v. Vose, 865 F.Supp. 53, at 56. "A medical need is 'serious' if it is one that has been diagnosed by a physician as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Id. The later is applicable in this instance.

14

Being disabled as a left leg amputee is a condition so obvious even to lay persons such as the corrections officers, that an inference should be permitted that the Defendants should have recognized the necessity to provide the Plaintiff with permanent access to the handicapped shower that was available in the Health Service Department. In a light most favorable to the Plaintiff, the Defendant provided access for only a limited time period. Further, once the Plaintiff was released from custody, Plaintiff's injuries necessitated surgery to the stump of his leg as detailed in Plaintiff deposition transcript, as follows:

> Q:    Let me ask you this: After being treated at the correctional facility, when you got - - after you got out?
> A:    Right.
> Q:    You went and you had to have a revision [surgery remodeling stump] done?
> A:    Right.
> Q:    To the leg?
> A:    Right; because when they did the revision, all I know is when I got out, I had problems due to the falls. I went to the doctor. I explained to him what happened. He took a look at it and he said it had to be revised or this would just spread and I would be in trouble.

See Exhibit 3, Plaintiff's Deposition Transcript, pg 102, line 14 through line 24, and pg. 103, line 1 through line 3

### The Plaintiff Was Punished For Requesting Access To A Handicapped Shower.

Shortly after the Plaintiff requested access to handicapped shower facilities, Plaintiff was transferred to Cell Block C3 which was a "lock down" pod. In a "lock-down" pod all privileges were suspended including the right to visitation, telephone call, social interaction and television viewing. Additionally, Plaintiff testified at his deposition that, "When they put me in C-3, sir, that was punishment enough." A reasonable inference can be drawn that the defendant considered the transfer to "C-unit," to be punishment for the plaintiff's complaints. Specifically,

one correctional officer remarked, "enjoy the showers," (See: Exhibit 3, Plaintiff Deposition Transcript pg. 63, line 24 through pg. 64, line 4).

Moreover, the Plaintiff was denied the ability to file a complaint, as detailed in his deposition, as follows:

A:    I asked [Bigelow] to make out a complaint form and he said no.  He says we don't do that in this pod.  I said why not.  He said because you're a sign of a troublemaker. . . (See Exhibit 3, Plaintiff's Deposition Transcript, pg 39, line 3 through line 7).

A:    They wouldn't give me the paperwork to file my grievance. . .  (See Exhibit 3, Plaintiff's Deposition Transcript, page 39, line 16 through line 17).

A:    I asked two or three officers and they all told me the same things, they don't give out paerwork for CHINS - - not CHINS - - the complaint. . .  (See Exhibit 3, Plaintiff's Deposition Transcript, pg. 40, line 2 through line 4).

Accordingly,  genuine issues of material fact exists as to whether this was an obvious injury requiring medical treatment, whether the actions the defendants amounted to deliberate indifference and whether the correctional staff engaged in threatening behavior intended to violate the plaintiff right to seek medical attention and protect his rights. Because of these issues the defendants' motion for summary judgment should be denied.

**2.    The Defendant's Motion To Dismiss The Plaintiff's State Civil Rights Claim Should Be Denied**

The Massachusetts Civil Rights Act (G.L. c. 12 §11I) provides in pertinent part:

> Any person whose exercise or enjoyment of rights secured by he constitution or laws of the United States, or of rights secured by the constitution or laws of the  commonwealth, has been interfered with, or attempted to be interfered with,  [by any person by means of threats, intimidation or coercion],

16

may [bring an action]...

In order to prevail on a claim under the Massachusetts Civil Rights Act, the plaintiff must

prove three elements. The plaintiff must establish that (1) his exercise or enjoyment of rights

secured by the Constitution or the laws of either the United States or of the Commonwealth, (2)

has been interfered with, or attempted to be interfered with, by the defendant(s), and (3) the

interference or attempted interfere was by threats, intimidation, or coercion. Swanset

Development Corporation v. City of Taunton, 423 Mass. 390, 395, 668 N.E. 2d 333, 337 (1996);

Sarvis v. Boston Safe Deposit and Trust Co., 47 Mass.App.Ct. 86, 91, 711 N.E. 911, 917 (1999);

LaManque v. Massachusetts Department of Employment and Training, 3 F.Supp.2d 83, 93

(D.Mass. 1998); French v. United Parcel Service, Inc., 2 F.Supp.2d 128, 133 (D.Mass. 1998).

The defendants aver in its Motion for Summary Judgement that the plaintiff has failed to

allege any threats, intimidation or coercion in his verified complaint, and thus is entitled to

summary judgement. The defendant have not asserted that the plaintiff has failed to allege

interference or attempted interference with a secured right. The plaintiff had a secured right to

expect and to request adequate medical treatment and or access to handicapped facilities while in

the custody of the defendants. Prisoners have a right, subject to reasonable limitations of time

and place, to petition prison authorities for the redress of their grievances. That right is a secured

right under the Massachusetts Civil Rights Act. Langton v. Secretary of Public Safety, 37

Mass.App.Ct. 15, 19, 636 N.E.2d 299, 302 (1994).

Prior argument supported by discovery demonstrates that the Plaintiff was denied access

even to file a complaint or grievance. The plaintiff also provides that Corrections officials

transferred him to a lock-down unit with no privileges. Accordingly, the record evidence

17

presents sufficient evidence to establish a violation of the Massachusetts Civil Rights Act and the

Defendants' motion for summary judgement should be denied.

### C. THE DEFENDANT'S MOTION TO DISMISS THE PLAINTIFF'S COMMON LAW TORT CLAIMS (COUNTS VIII, IX, AND X) SHOULD BE DENIED

The defendants' assert that the plaintiff's allegations of negligence, intentional infliction

of emotional distress and negligent infliction of emotional distress must be dismissed because:

(A) the plaintiff has failed to meet the Massachusetts Tort Act presentment requirements, and (B)

the doctrine of "open and obvious danger" precludes recovery.

#### A.    The Plaintiff's Presentment To Secretary of State Was Sufficient Under The Massachusetts Tort Claims Act.

Defendant ties too tight a rope around its assertion that in this case proper presentment

under the Massachusetts Tort Claims Act must be made to the Attorney General of the

Commonwealth.    Pursuant to the Massachusetts Tort Claims Act:

> "A civil action shall not be instituted against a public employer on
> a claim for damages under this chapter unless the claimant shall
> have first presented his claim in writing to the **executive officer of
> such public employer** within two years after the date upon which
> the cause of action arose . . ." [G.L. c. 258 § 4] (emphasis added).

The term "executive officer of such public employer" is defined in G.L. c. 258 § 1 as

follows:

> "Executive officer of a public employer," the **secretary of an executive
> office** of the commonwealth, or in the case of an agency not within the
> executive office, the attorney general . . ."

The executive officer of the Commonwealth is charged with the enforcement of the laws

of the Commonwealth and as such the punishment of offenders.    Corrections facilities fall within

the executive offices of the Commonwealth. (Massachusetts General Laws Chapter 126 §1 et al.;

18

"Pursuant to the provisions of G.L. c. 126, the Commonwealth provides for county jails and houses of corrections..." Gordon v. Sheriff of Suffolk County, 411 Mass. 238, 241, 580 N.E.2d 1039, 1041 (1991); "The Commissioner of Correction is responsible, in part, for the administration and operation of correctional facilities of the Department of Correction and has statutory obligations with respect to county jails and correctional facilities, *citing* G.L. c. 124 §§1, 6, and G.L. c. 127 §§ 1A, 1B.)    Accordingly, the presentment made to an executive office of the Commonwealth and made on behalf of the Plaintiff to the Secretary of State on September 25, 2001 was sufficient under the statute.

### B.    The Plaintiff Concedes That The Defendants Ashe And Conklin Are Immune From Liability For Tort Claims Under G.L. Chapter 258.

As public employees the Defendants, Ashe and Conklin, are entitled to immunity from liability under M.G.L. c. 258 for actions taken within the scope of their employment. The plaintiff concedes that the defendant's were acting in the scope of their employment and thus are immune from liability under the Tort Claims Act.

The failure to provide the Plaintiff access to handicapped shower facilities was negligent and was a proximate cause of the plaintiff's injuries. The failure to provide the plaintiff with access to handicapped shower facilities caused the plaintiff emotional distress in addition to the physical injuries suffered. The failure to provide the defendant with access to handicapped shower facilities should preclude the entry of summary judgement as to Counts VIII, IX, AND X.

The question is whether a person of ordinary intelligence would understand the actions they engaged in will likely lead to the injuries suffered. O'Sullivan v. Shaw, 431 Mass. 201, 204; 726 N.E.2d 951, 955 (2000). Here, even after the Plaintiff was injured the Defendant continued

19

to deny him access to handicapped shower facilities.

Finally, in cases involving dangerous conditions not caused by active negligence, there must be evidence that a defendant had actual knowledge of the condition or that it had lasted for a long enough period for the defendant to know that a dangerous condition existed. <u>Briggs v. Taylor</u>, 397 Mass. 1010, 494 N.E.2d 1023 (1986). In this case the Corrections Center knew or should have known that the Plaintiff had injured himself while attempting to utilize a non-handicap equipped shower and was in jeopardy of further injury.

The Court should deny the Defendants' motion for summary judgement on Counts VII, IX and X, because the Defendant's failure to provide the Plaintiff access to handicapped shower facilities was a proximate cause of the plaintiff's injuries, pain and suffering and the motion for summary judgment should be denied.

**CONCLUSION**

For the reasons stated above, Summary Judgement should be denied.

Respectfully Submitted
WARREN PARTELOW
By his attorney,

September 12, 2005

Alfred P. Chamberland
BBO#: 564751
9 Campus Lane -- PO Box 217
Easthampton, MA 01027-0217
(413) 529 - 0404

## CERTIFICATE OF SERVICE

I, Alfred P. Chamberland, hereby certify that the above document was provided to the Defendant's Counsel of Record via First Class US Mail, post pre-paid on September 12, 2005.

Edward J. McDonough, Jr., Esquire
Egan, Flanagan and Cohen, P.C.
67 Market Street - PO Box 9035
Springfield, MA 01102-9035

Alfred P. Chamberland