MENTAL HEALTH EVALUATION

DATE: 01/03/2001                          TIME: 1805
HAMPDEN COUNTY CORRECTIONAL CENTER        NAME: PARTLOW,WARREN
                                          DOB :   01/30/62 SEX:  M
                                          RACE: CAUCASIA  AGE:   38
                                          M/STATUS:    None ZIP CODE:
DEPARTMENT OF HEALTH SERVICES             AKA :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
                    CELL: C4-010      INMATE # 000123031
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -


ENCOUNTER REPORT 1/3/2001 PERSON NUMBER:000123031    PRINTED: 1/3/2001
PARTLOW,WARREN (M) 38 Years (1/30/62)


1/3/2001 18:05  SITE MEDICAL CLINIC    TYPE MENTAL HEALTH EVALUATION
          CLINIC VISIT  SANTIAGO,DAMARIS,RN  entered by:SANTIAGO,DAMARIS,RN

                          DIAGNOSES/PROBLEMS

YLCR4-N    HISTORY OF HOSPITALIZATION FOR MENTAL PROBLEM NO
YLCZ5-N    HISTORY OF OUTPATIENT MENTAL HEALTH RX NO
YLCP7      LIST OF CURRENT PSYCHIATRIC MEDICATIONS
               PT STS NONE.
YLCX8-N    HAVE YOU EVER TRIED TO KILL YOURSELF NO
YLCE9-N    DO YOU FEEL HOPELESS NO
YLDX4-N    HAVE YOU EVER LOST CONTROL WHEN ANGRY NO
YLDZ1-N    DO YOU FEEL LIKE KILLING YOURSELF NOW NO
               PT DENEIS ANY SUICIDAL IDEATIONS DURING THE INTAKE.
YLDG2-N    HAVE YOU EVER TRIED TO KILL OR HURT SOMEONE ELSE NO
YLDP3-N    HAVE YOU EVER FELT SOMEONE WAS TRYING TO HARM YOU NO
YLDE5-Y    HAVE YOU EVER BEEN A VICTIM OF CRIMINAL VIOLENCE YES
YLDM6-Y    HAVE YOU EVER BEEN UNCONSCIOUS YES
               PT STS IN THE PAST WHEN LOST HALF L LEG.
YLDV7-N    HAVE YOU EVER HAD SEIZURES NO
WLBZ3-N    STREET DRUG USER NO
YLDC8-N    HX OF ARREST OR CONVICTION OF SEXUAL OFFENSE NO
YLDK9-P    INMATE RESPONSE TO INCARCERATION POSITIVE
YLEE1-N    DOES INMATE SOUND OR APPEAR MENTALLY ILL NO
YLEM2-N    IS INMATE IN NEED OF FURTHER EVALUATION NO
YLCG6-Y    HX OF SPECIAL EDUCATION CLASSES IN SCHOOL YES
BLTX3      ABILITY TO READ
               PT STS CAN READ AND WRITE ENGLISH.
BLTE4-4    GRADE COMPLETED IN SCHOOL HIGH SCHOOL
BLTM5-1    GRADES REPEATED IN SCHOOL 1
               PT STS REPEATED 12TH GRADE.
BLTV6-4    NOT LABELED BY SCHOOL AS


                             PROCEDURES

YXBL3      WHAT IS TODAYS DATE  PT STS 1/3/01.
YXBT4      WHO IS PRESIDENT OF US  PT STS CLINTON.
YXBB5      ADD 6 AND 3 AND 7  PT STS 16.
YXBJ6      ADD 11 AND 4 AND 12  PT STS 27.
YXBR7      WHAT IS YOUR DATE OF BIRTH  PT STS 1/3/62.
YXBZ8-Y    DO YOU KNOW YOUR SOCIAL SECUIRTY NUMBER YES
YXCB1      NAME SOME LARGE CITIES IN US
               AUSTIN TEXAS, BOSTON MA, CHICAGO ILLINOIS.
YXCJ2      HOW DO YOU GET TO SPRINGFIELD
               PT STS WILL TAKE A RT TURN AT PARKING LOT, WILL TAKE ART
               TURN AT END OF RD, WILL GET TO BOTTOM OF RD AND TAKE A
               RT TURN.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Signed off by (Inmate) : _Alan_ _Pastta_    _1-03-01_

*** 5/03/00 18:05HRS  "MH EVAL" IS DONE ***

5

## HAMPDEN COUNTY SHERIFF'S DEPARTMENT
### AND CORRECTIONAL CENTER

<u>INMATE REQUEST</u>

To: _SherriFF Ashe_

From: _WARDEN Partelow_          Person # _1 2 3 0 3 1_
Inmate Name

Date _01-09-01_  POD _H 1_  Cell _15_

Request _To Speake to you About putting handrails in shower stalls For handicap persons so we have something For safty to hold on to. (one For each pod) plase. Forthe safty of handicap persons under the A.D.A_

Inmates Signature _Warren Partelow_

Received by: _____

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

STAFF RESPONSE:

Approved ❑   Denied ❑   (state reason)

_____

_____

_____

_____

_____

Employee Name/Title _____ Date _____

WHITE · Unit File        YELLOW · Inmate        PINK · Kept by Inmate

HCHOC-0021 (3-Part) (9-4-92) [7-96] (167)



279

6

## HAMPDEN COUNTY SHERIFF'S DEPARTMENT AND CORRECTIONAl CENTER
### GRIEVANCE FORM

NAME: Warren Partlow                    POD & CELL B-Cell 7   PERSON # 183031

****Did you try to informally resolve your problem with a staff person?    Circle:   YES   NO

If yes is your answer, list the name of the staff person you talked to Capt. SAAdi

NATURE OF COMPLAINT (be brief and specific): They took about the handicap shower in B-2, I asked them how would I be able to shower, because I'm in a wheelchair, I do have a prostic leg but have a problems with my stump, I fell in the showers in A Tower & here in B Tower They told me that I would have to go to another pod, which didn't happen, the midicai told me to climb up stairs with a choir to the showers, I cant even walk, I'm in a wheel chair, I want some type of action taken, so I can take a shower, my rights as a handicap person have been violated, Under the American Disability Act, all handicap persons must be able to shower safly, its the law. There are 2 handicap persons in my pod, Capt Sandi told me that I'm starting trouble in his pod, I told him that I'm fighting for my legs/rights as a handicap person. I want some type of action taken about this matter.

Signature _Warren Partlow_                              Date _2-6-01_

---

INMATES DO NOT WRITE BELOW THIS LINE

Date Grievance Received_____

STAFF RESPONSE

cc: P. Cpt. Barbara
(AAA Coordin
K. Wyler
P. Cpt. Brosseau
T. Vasquez

Please respond in writing, sending the original copy to the Unit Grievance Coordinator:_____

1/7/0 Spoke w/ Dr. T. Coulldin — Willing to Shower Mr. Partlow in Health Service Dept. Will coordinate w/ Kasty Wyler

2/8/00 Spoke w/ Nurse Wyler, you will be able to Shower in our Heacrd Service Dept., We Api For the inconvience while our Showers are Being redone in the Unit. Soon Each pod will have a handicapped accessable shower.

Mr. Drm. Panll

STAFF SIGNATURE/I.D. # _Varquis Alev_ 2964        DATE _2/8/01_  Unit A

ORIGINAL:  CENTRAL RECORDS              PHOTOCOPY:  TO CASE FILE

HCHOC-0085 (#20 Wht) 5-20-97

278

7

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

C.A. No. 03-30294-MAP
Pages 1-95

WARREN PARTELOW

vs.

COMMONWEALTH OF MASSACHUSETTS ET ALS

📄 **COPY**

------------------------------------------------------------

### TELEPHONIC DEPOSITION OF:   CHARLES L. NEWMAN
------------------------------------------------------------

Taken before Joanne Coyle, Certified
Shorthand Reporter, Notary Public, pursuant
to the Federal Rules of Civil Procedure, at
the offices of Egan, Flanagan and Cohen,
P.C., 67 Market Street, Springfield,
Massachusetts on MARCH 23, 2005, commencing
at 11:10 a.m.

Joanne Coyle
Certified Shorthand Reporter
License No. 106693

**PERLIK and COYLE REPORTING**
Certified Professional Reporters

1331 Main Street
Springfield, MA 01103
Tel. (413) 731-7931      Fax (413) 731-7451

**PERLIK and COYLE REPORTING**

1    Q.    Your understanding at some point in time

2    Mr. Partelow was moved from one living unit into C

3    Tower because C Tower had compliant showers?

4    A.    That is correct.

5    Q.    Do you have any criticisms of the

6    showers in C Tower?

7    A.    I've never seen them so I don't know.

8    Q.    So you have no criticisms, then?

9    A.    Right.

10    Q.    Are you critical of the decision to move

11    Mr. Partelow to C Tower?

12    A.    My criticism is that you have an

13    individual who is not a maximum security

14    classified individual being placed in maximum

15    security for the convenience of the facility in

16    order to allow him to shower.

17        On that basis, they took his rights to

18    visitation and other privileges that are common in

19    a low security unit away from him in order to

20    satisfy his need to shower.

21        I think the decision -- and I think it

22    was a wise one -- to have him shower in the

23    medical unit, which did have such facilities,

24    would have been a far better choice.


**PERLIK and COYLE REPORTING**

1    Q.    So let's try to break that down.  You

2    have no criticisms of the decision to allow him to

3    shower in the medical unit?

4    A.    No.

5    Q.    In fact, you're pleased with that

6    decision?

7    A.    I think it was the sensible decision

8    given the fact that the man obviously had problems

9    showering in that he had fallen a number of times

10   and he was well-known in the health unit to say

11   we're dealing with him on a reasonable basis to

12   handle it.

13   Q.    You think it's reasonable to allow him

14   to shower in the medical unit in order to

15   accommodate his disability?

16   A.    Lacking other facilities that were

17   consummate with his needs; yes.

18   Q.    It is your understanding, though, that

19   for at least some period of time Mr. Partelow was

20   housed in unit C where there were better showers?

21   A.    I think he was there.  I believe he was

22   there for one day.

23   Q.    What is your understanding as to why he

24   left?

77

1    available every single day to handicapped inmates?

2         A.    Well, to put this in a slightly

3    different context, there were, in the health unit,

4    a handicapped available unit twenty-four hours a

5    day, seven days a week.

6            The issue is not whether they were

7    available anyplace; it's whether there was an

8    acceptable unit available -- and there was.  It

9    was in the health unit.

10        Q.    Do you consider and hold yourself out as

11   an expert in jails and prisons?

12        A.    In jails; yes.

13        Q.    You draw the distinction between jails

14   and prisons?

15        A.    Yes.

16        Q.    Would you explain your distinction to

17   me?

18        A.    Ordinarily, jails hold -- for the most

19   part, hold persons who are awaiting trial and, of

20   course, will hold some sentenced inmates.

21            Prisons, on the other hand, with rare

22   exceptions don't hold pre-trial inmates unless

23   it's a high profile individual.  Everybody there

24   in the prison has been sentenced for a finite

1          Is your opinion as an expert that

2   inmates are required --

3          A.    (Interposing) No; they are not required.

4   They have to have access to showering, I believe,

5   but there is an American Correctional Standard

6   that they shower three times a week.

7          Q.    So it is clear, it's not your opinion

8   that inmates be required to shower every day, is

9   that correct?

10         A.    That's correct.

11         Q.    You have some familiarity with the

12  American Correctional Standards?

13         A.    American Correctional Association

14  Standards For Jails.

15         Q.    Do you possess your own copy of the ACA

16  Standards?

17         A.    Yes; I do.

18         Q.    Do you have it with you, today?

19         A.    No; I do not.

20         Q.    Where is it?

21         A.    In my pile, my bookcase.

22         Q.    In the building that you are in now?

23         A.    Yes; I did not refer to it because I was

24  familiar with its contents.

1      Q.    Is it your opinion that there is an ACA

2   Standard that is applicable to this case?

3      A.    I would say either the American

4   Correctional Association Standard or the American

5   Correctional Health Association Standard.  It may

6   be in both or it may be only in one.

7          At this particular juncture, I don't

8   recall and I will check that out if you want me

9   to.

10     Q.    What standard are you thinking of?

11     A.    The standard requiring handicapped

12  accessible showers as well as other handicapped

13  accessible opportunities.

14     Q.    Are you familiar with an accreditation

15  process?

16     A.    Yes.

17     Q.    Conducted by the ACA?

18     A.    Yes.

19     Q.    Is the Hampden County Correctional

20  Center accredited under the ACA?

21     A.    I do not know.

22     Q.    Do you know any officials at the ACA?

23     A.    Currently, no.  For years, I was

24  intimately involved with a variety of officials

1      Q.    Doctor, let me just try to wrap up here.

2    Is it your understanding that this situation

3    regarding Mr. Partelow occurred while the Hampden

4    County facility was in the process of renovating

5    their showers?  Is that your general

6    understanding?

7      A.    General understanding; yes.

8      Q.    Do you agree that there was at least an

9    attempt made by the correctional staff to

10   accommodate Mr. Partelow's handicap?

11     A.    I think their initial attempts were

12   rather short-sighted and resulted in injury to

13   Mr. Partelow.

14     Q.    I understand that you're not satisfied

15   with the attempt but would you at least agree with

16   me that the correctional staff made attempts to

17   accommodate him?

18     A.    If they do something wrong, that

19   represents an attempt to satisfy, is that the

20   implication?

21     Q.    I understand that it's your opinion that

22   their attempts were insufficient, is that correct?

23     A.    I would say that beyond being

24   insufficient, they were incorrect.

**PERLIK and COYLE REPORTING**

1    Q.    Fair enough.  I'm not trying to

2   challenge your conclusions in that regard but you

3   will agree with me, will you not, Doctor, that

4   there was at least some attempts made to

5   accommodate him, wouldn't you?

6    A.    Yes.

7    Q.    One of the attempts was to give him a

8   chair in the shower?

9    A.    That was a dangerous alternative.

10    Q.    I understand, but you're getting ahead

11   of me.

12    A.    Okay.

13    Q.    Do you understand that they did provide

14   him a chair in at least an attempt to accommodate

15   him?

16    A.    Yes.

17    Q.    Would you agree that they gave him a

18   wheelchair while he was in the facility?

19    A.    Yes.

20    Q.    Would you agree that they gave him a

21   handicapped compliant cell when he was in -- well,

22   a handicapped compliant cell, apart from the

23   showers?

24    A.    I don't know.

**PERLIK and COYLE REPORTING**

1    COMMONWEALTH OF MASSACHUSETTS
     COUNTY OF HAMPDEN
2

3          I, JOANNE COYLE, a Notary Public within and
     for the Commonwealth of Massachusetts at large, do
     hereby certify that I took the deposition of
4    CHARLES L. NEWMAN, pursuant to the Federal Rules
     of Civil Procedure, at the offices of Egan,
5    Flanagan and Cohen, P.C., 67 Market Street,
     Springfield, Massachusetts, on MARCH 23, 2005.
6

7          I further certify that the above-named
     deponent was by me first duly sworn to testify to
     the truth, the whole truth and nothing but the
8    truth concerning his knowledge in the matter of
     the case of WARREN PARTELOW vs. COMMONWEALTH OF
9    MASSACHUSETTS ET ALS, now pending in the United
     States District Court for the District of
10   Massachusetts, Western Division.

11         I further certify that the within testimony
     was taken by me stenographically and reduced to
12   typewritten form under my direction by means of
     COMPUTER ASSISTED TRANSCRIPTION; and, I further
13   certify that said deposition is a true record of
     the testimony given by said witness.
14

15         I further certify that I am neither counsel
     for, related to, nor employed by any of the
     parties to the action in which this deposition was
16   taken; and further, that I am not a relative or
     employee of any attorney or counsel employed by
17   the parties hereto, nor financially or otherwise
     interested in the outcome of the action.
18

19         WITNESS my hand and seal this  _11th_ day of
     APRIL, 2005.

20                        _Joanne Coyle_
                          Joanne Coyle
21                        Notary Public
                          Certified Shorthand Reporter
22                        License No. 106693

23   My Commission Expires
     May 12, 2011
24

**PERLIK and COYLE REPORTING**

8



DEFENDANT'S
EXHIBT

3 Jackson
3/23/05  Nr

**ADMINISTRATION OF JUSTICE SERVICES, INC.**
**10808 GOLDEN MAPLE PLACE**
**LOUISVILLE, KY 40223**

**DR. CHARLES L. NEWMAN, PRESIDENT**
*FELLOW, AMERICAN ASSOC. FOR THE ADVANCEMENT OF SCIENCE*
*FELLOW, AMERICAN SOCIETY OF CRIMINOLOGY*
*FELLOW, WESTERN SOCIETY OF CRIMINOLOGY*

PHONE/FAX: (502)-245-5761

E-MAIL: Charleslnewman@aol.com

March 8, 2005

CONSULTANT'S REPORT
*IN THE MATTER OF*
PARTELOW v MASSACHUSETTS DEPARTMENT OF CORRECTION

## CONSULTANT'S QUALIFICATIONS

The author of this report, Dr. Charles L. Newman, has over fifty years experience as a criminal justice educator and administrator, researcher, consultant to Federal, State and County government agencies regarding criminal justice matters. With the support of the U.S. Department of Justice, Law Enforcement Assistance Administration, he founded and directed the National Jail Resources Center at The Pennsylvania State University, the mission of which was to provide policy studies related to jail organization and services delivery. He assisted the Federal Court (Judge Sarah Hughes) in the reorganization of the Dallas, Texas Jails and later served as Director of the Dallas County Jail System. Subsequently he was retained to reorganize the El Paso County, Texas jails. He has been retained by over 80 jurisdictions to assist in the assessment of jail needs, planning and operational design across the United States. Dr. Newman is a Past President of the American Society of Criminology, and founding Editor of its peer-reviewed journal, CRIMINOLOGY. He has authored, edited, and contributed to twenty-three books and almost a hundred research reports and articles. The Appendix to this document contains a professional resume and a partial list of publications.

## THE FACTS OF THIS CASE

Mr. Warren Partelow was incarcerated in the Hampton County Correctional Facility, Ludlow, MA, a facility under the control of the Massachusetts Department of Corrections. Mr. Partelow has one leg partially amputated as a result of an industrial accident some years before this most recent incarceration. He meets the definition as "handicapped" under the Americans With Disabilities Act (ADA). During his incarceration, Mr. Partelow was denied access to appropriate showering facilities (i.e. with handicap "grab bars" to assist him in standing), resulting in several falls which further exacerbated the injury to the stump of his amputated leg. The records show that Mr. Partelow brought the

discriminatory actions of the Corrections Facility staff to the attention of Sheriff Ashe, who promised, but never delivered, a solution. The records also show that other staff members, including Captains Saddi and Walker, were asked to resolve the lack of safe showering facilities for handicapped persons.


## PROFESSIONAL FINDINGS

- The State of Massachusetts is not immune from responsibility in this matter under Section 502 of ADA

- The ADA has specific exclusions, but being incarcerated in not among those which are identified in the Act, *contra* to the Defendants' *Affirmative Defenses* at "6".

- In his response to Interrogatory No. 2, the respondent, Deputy Chief of Security John Kenney, Hampden County Correctional Center stated "I am unaware of any alleged accidents involving the plaintiff. *The plaintiff made no report of any accidents or injuries. (*emphasis added*).* The second sentence of his statement is factually incorrect. Records provided in Discovery indicate that such reports were rendered. .

- Clearly the respondent, Mr. John Kenney, was intentionally misleading when he stated in response to the Plaintiff's *First Set of Interrogatories," that he was unaware of any accident involving the Plaintiff."* From my professional experience as a Jail Administrator, I know that the Security Office is informed about such matters, particularly when such accidents are reported in INCIDENT REPORTS. We read copies of such reports which were provided by the Defendant. If he was uninformed, he was derelict in his duty in his failure to deal with the problem.

- There is no issue regarding the lack of handicap bathing facilities in Mr. Partelow's jail housing assignment. While at some later time, handicap bathing facilities may have been installed in his housing unit, such resources were not available when Mr. Partelow was housed there. In response to this deficienc

- , Mr. Partelow was offered the "opportunity" to move to a lock-down unit with such facilities, but at the expense of his rightful privileges. Another alternative was to provide appropriate bathing facilities in the Health Center, but for undefined reasons, that alternative was abruptly terminated.

- Section 102 of ADA clearly states that architectural barriers are prohibited. Mr. Partelow was provided a chair with which he was to balance himself while showering. This alternative was a substitute for "grab bars" and created a hazard resulting in additional injury to him.

CONCLUSIONS

Having examined in depth the pleadings, discovery and medical records provided to me, in my professional opinion, the Massachusetts Department of Corrections, the Hampden County Correctional Facility and certain of its personnel violated Mr. Partelow's rights under ADA and possibly other civil rights statutes. His request for appropriate handicap resources in the bathing area were ignored, partially provided and then terminated without explanation, or fulfilled in a manner which was dangerous and inappropriate (chair), which resulted in injuries to Mr. Partelow.


Respectfully submitted:

Charles L. Newman


Attachments:

Documents used in rendering this opinion

Personal professional resume and bibliography

## DOCUMENTS USED IN RENDERING THIS OPINION:

The following groups of documents were examined, as provided by the Plaintiff::

All PLEADINGS in regard to this matter

All DISCOVERY in regard to this matter

All MEDICAL RECORDS in regard to this matter

In addition, the following resources were consulted:

Text of the Americans with Disabilities Act



DR. CHARLES L. NEWMAN
ADMINISTRATION OF JUSTICE SERVICES, INC.
10908 GOLDEN MAPLE PLACE
LOUISVILLE, KENTUCKY 40223-5525

Alfred P. Chamberland, Esq.
9 Campus Lane, P. O. Box 217
Easthampton, MA 01027

01027:0217 03