UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

FILED
CLERK'S OFFICE

2005 DEC 12 P 1:39

U.S. DISTRICT COURT
DISTRICT OF MASS.

WARREN PARTELOW, )
        Plaintiff )
 )
v. )
 )
COMMONWEALTH OF MASSACHUSETTS; )   Civil Action Number:
HAMPDEN COUNTY CORRECTIONAL )
CENTER; MICHAEL ASHE JR., Sheriff of )   03-30294-MAP
Hampden County; THOMAS CONKLIN, )
Superintendent of Health Services of Hampden )
County Correctional Center, CPT. WALKER; )
CPT. SADDI, and certain JOHN DOES, )
        Defendants )

**SUPPLEMENTAL MEMORANDUM OF LAW**

On November 21, 2005, the parties appeared before the Court for a hearing on the defendant's Motion for Summary Judgement. At the conclusion of the hearing the Court ordered the parties to present a supplemental memorandum of law on three issues. First, the parties were requested the review the jurisdiction of the Court in light of the defendant's assertion that the Eleventh Amendment precluded the plaintiff's Americans with Disabilities Act (ADA) claim. Second, in light of recent case law[1], the Court requested that the parties present written arguments on the issue if plaintiff had made sufficient presentment under the Massachusetts Tort Claims Act. Finally, the court requested that the parties review the existing record to clarify the issue as to why the plaintiff's ability to continue to shower in the medical unit stopped.

---

[1] On November 10, 2005, the Massachusetts Appeal's Court issued its determination in the matter on <u>Garcia v. Essex County Sheiff's Department</u>, 65 Mass.App.Ct. 104, 837 N.E.2d 284 (November 10, 2005). In this case, the parties "agreed that Sheriff Frank Cousins was the executive officer [of Essex County] and thus was the appropriate person to notify [under the Massachusetts Tort Claims Act.]"

I.  **JURISDICTIONAL ISSUES**

A.  **The Eleventh Amendment of the United States Constitution does not preclude a prisoner's individual right of action under the Americans with Disabilities Act.**

On January 2, 2001, the plaintiff, a left leg amputee, was sentenced to serve a nine (9) month sentence at the Hampden County House of Correction. It is undisputed that as of July 1, 1998, the County of Hampden was abolished by Massachusetts General Laws c.34B and the functions of the county including the operation of the House of Correction and Jail were transferred to the Commonwealth of Massachusetts. The defendant asserts that the plaintiff's ADA claim is barred by the Eleventh Amendment of the United States Constitution which renders the States immune from "any suit in law or equity, commenced or prosecuted ... by Citizens of another State, or by Citizens or Subjects of any Foreign State." Even though the Amendment "by its terms ... applies only to suits against a State by citizens of another State," U.S. Supreme Court cases have repeatedly held that this immunity also applies to unconsented suits brought by a State's own citizens. Board of Trustees of Univ. of Ala. v. Garrett, 531 U.S. 356, 363, 121 S.Ct. 955, 148 L.Ed.2d 866 (2001); Kimel v. Florida Board of Regents, 528 U.S. 62, 72-72, 120 S.Ct. 631, 145 L.Ed.2d 522 (2000). However, the U.S. Supreme Court has also held that Congress may abrogate the State's Eleventh Amendment immunity. To determine if it has done so in any given case, the Court "must resolve two predicate questions: first, whether Congress unequivocally expressed an intent to abrogate that immunity; and second, if it did, whether Congress acted pursuant to a valid grant of constitutional authority." Id, at 73, 120 S.Ct. 631.

2

The first question is easily answered in this case. The A.D.A. specifically provides: "A State shall not be immune under the eleventh amendment to the Constitution of the United States from an action in Federal or State court of competent jurisdiction for a violation of this chapter." 42 U.S.C. § 12202. The second question is more difficult.

In Board of Trustees of Univ. of Ala. v. Garrett, 531 U.S. 356, 363, 121 S.Ct. 955, 148 L.Ed.2d 866 (2001), the U.S. Supreme Court ruled that because there was an insufficient history of States engaging in employment discrimination against people with disabilities, Congress lacked the constitutional authority to abrogate the State's Eleventh Amendment's immunity. The Court thus ruled that State's were not subject to individual suits under Title I of the ADA. However, the Court left unresolved the question of individual suits under Title II and Title III.

That question was answered in Tennessee v. Lane, 158 L.Ed.2d 820, 124 S.Ct. 1978 (2004). In examining the legislative history, the Court noted that "Congress enacted Title II against a backdrop or pervasive unequal treatment in the administration of state services and programs, including systemic deprivations of fundamental rights." Id, 124 S.Ct. at 1989 (2004). The Court went on to analyze the many settings where individuals with disabilities had been deprived of equal protection and fundamental rights, "including the penal system." Id. The court cited LaFaut v. Smith, 834 F.2d 389, 394 (C.A. 4 1987)(paraplegic inmate unable to access toilet facilities); Schmidt v. Odell, 64 F.Supp.2d 1014 (D.Kan.1999)(double amputee forced to crawl around the floor of the jail) and Key v. Grayson, 179 F.3d 996 (C.A.6 1999)(deaf inmate denied access to sex offender therapy program allegedly required as precondition for parole.) as examples of the unequal treatment Congress was attempting to address in passing Title II.

Accordingly, the Court determined that as to Title II, Congress has legitimately and

3

constitutionally abrogated the State's Eleventh Amendment immunity. Therefore, Mr. Partelow's ADA claim is not precluded by the Eleventh Amendment.

> **B.  The Plaintiff's Presentment Letter upon the Sheriff of Hampden County and the Secretary of the Commonwealth was sufficient under the Massachusetts Tort Claims Act.**

Prior to commencing suit, the plaintiff served a demand letter upon the Sheriff of Hampden County and upon the Secretary of State. The defendants assert that this presentment was insufficient as a matter of law and thus requires as dismissal of the plaintiff's common law tort claims. The Massachusetts Tort Claim's Act, provides in part:

> A civil action shall not be instituted against a public employer on a claim for damages under this chapter unless the claimant shall have first presented his claim in writing to the *executive officer* of such public employer within two years after the date upon which the cause of action arose, and such claim shall have been finally denied by such executive officer in writing and sent by certified or registered mail, or as otherwise provided by this section. The failure of the executive officer to deny such claim in writing within six months after the date upon which it is presented, or the failure to reach final arbitration, settlement or compromise of such claim according to the provisions of section five, shall be deemed a final denial of such claim. No civil action shall be brought more than three years after the date upon which such cause of action accrued.

Massachusetts Tort Claims Act (M.G.L. c. 258 §4)(emphasis added)

In defining, executive officer, the act provides:

> "Executive officer of a public employer", the secretary of an executive office of the commonwealth, or in the case of an agency not within the executive office, the attorney general; the adjutant general of the military forces of the commonwealth; the county commissioners of a county; the mayor of a city, or as designated by the charter of the city; the selectmen of a town or as designated by the charter of the town; and the board, directors, or committee of a district in the case of the public employers of a district, and, in the case of any other public employer, the nominal chief executive officer or board.

Massachusetts Tort Claims Act (M.G.L. c. 258 §1)

With the passage of M.G.L. c. 34B, the Massachusetts Legislature abolished county government. The statute abolished the county of Hampden and the Hampden County Commisisoners Office effective July 1, 1998. However, the statute left intact the position of sheriff:

> Notwithstanding the provisions of any general or special law to the contrary, the sheriff of an abolished county, including Franklin county, in office immediately before the transfer date, and, in Hampshire county, on September 1, 1998 shall become an employee of the commonwealth with salary to be paid by the commonwealth. The sheriff shall remain an elected official under the provisions of section 159 of chapter 54. Said sheriff shall operate pursuant to the provisions of chapter 37. Such sheriff shall retain administrative and operational control over the office of the sheriff, the jail, and the house of correction as of the transfer date. Said administrative and operational control shall include, but not be limited to, the procurement of supplies, services and equipment.

Massachusetts General Laws Chapter 34B §12.

Effective July 1998, the position and responsibilities of the Hampden County Commissioners were abolished. However, the administrative and operational responsibilities over the office of sheriff, the jail, and the house of corrections were retained in the elected office of the Sheriff. In <u>Garcia v. Essex County Sheiff's Department</u>, 65 Mass.App.Ct. 104, 837 N.E.2d 284 (November 10, 2005), the parties recognized that after the abolition of the County the Sheriff became the executive officer for purposes of presentment in the County. Massachusetts G.L. c. 34B §12 clearly makes the sheriff the responsible individual for all administrative and operational functions of the jail and house of corrections. He is clearly the executive officer and the appropriate person upon whom to make presentment. Mr. Partelow's presentment letter upon the Sheriff should be sufficient to survive the defendant's motion for summary judgement.

Further, the plaintiff asserts that if service upon the Sheriff was insufficient than the

service upon the Secretary of State was appropriate under the clear and unambiguous language of the Massachusetts Tort Claim's Act itself. As stated above, the Massachusetts Tort Claims Act provides in relevant part:

> "A civil action shall not be instituted against a public employer on a claim for damages under this chapter unless the claimant shall have first presented his claim in writing to the **executive officer of such public employer** within two years after the date upon which the cause of action arose . . ." [G.L. c. 258 § 4] (emphasis added).

The term "executive officer of such public employer" is defined in G.L. c. 258 § 1 as follows:

> "Executive officer of a public employer," the **secretary of an executive office** of the commonwealth, or in the case of an agency not within the executive office, the attorney general . . ."

The executive officer of the Commonwealth is charged with the enforcement of the laws of the Commonwealth and as such the punishment of offenders. Corrections facilities fall within the executive offices of the Commonwealth. (Massachusetts General Laws Chapter 126 §1 et al.; "Pursuant to the provisions of G.L. c. 126, the Commonwealth provides for county jails and houses of corrections..." Gordon v. Sheriff of Suffolk County, 411 Mass. 238, 241, 580 N.E.2d 1039, 1041 (1991); "The Commissioner of Correction is responsible, in part, for the administration and operation of correctional facilities of the Department of Correction and has statutory obligations with respect to county jails and correctional facilities, *citing* G.L. c. 124 §§1, 6, and G.L. c. 127 §§ 1A, 1B.) Accordingly, the presentment made to an executive office of the Commonwealth and made on behalf of the Plaintiff to the Secretary of State on September

6

25, 2001 was also sufficient under the statute.

The defendant's motion to dismiss premised upon improper presentment should be denied.

## II. QUESTIONS OF FACT

Based upon the record evidence, there is a genuine issue of material fact on the question of whether or not the plaintiff was denied adequate, accessible and safe showering by the defendants. Summary Judgment will only be granted if "there are no genuine issues of material fact" and "the moving party is entitled to judgement as a matter of law" Fed. R. Civ. P. 56(c). *See:* Magee v. United States, 121 F.3d 1, 3 (1st Cir. 1997). At this point in the proceedings, the court must resolve any conflicts in the summary judgment materials, and make all logically permissible inferences, in plaintiff's favor" Willitts v. Roman Catholic Archbishop of Boston, 411 Mass. 202, 203 (1991); *See also* LeBlanc v. Great American Insurance Co., 6 F.3d 836 (1st Cir., 1993) This includes observing all conflicts in fact in favor of the non-moving party and drawing all reasonable inferences in the non-moving party's favor.

### A. The record evidence establishes that the plaintiff was provided only a limited number of handicapped accessible showers during his incarceration

During the plaintiff's incarceration the defendants were engaged in remodeling the facility, especially the shower facilities. During the plaintiff's incarceration, the defendant offered handicapped accessible showers in the "new man" unit (See: Plaintiff Deposition Transcript pg. 24, line 15 through line 21), in the "medical" unit (See: Plaintiff Deposition Transcript pg. 59, line 18 through line 21), and in the "maximum security C-unit." (See: Plaintiff Deposition

Transcript pg. 63, line 8 through line 23)   There were no handicapped accessible showers in the "B" tower where the plaintiff was assigned the majority of his incarceration (See: Plaintiff Deposition Transcript pg. 31, line 11 through line 22).   During the 141 days that the plaintiff was incarcerated at the Defendant's facility, the defendants provided the plaintiff accessible showering on 29 occasions (23 days in the medical unit, 3 days in the "new man" unit, and 3 days in "C" Tower's maximum security unit.) (See: Plaintiff Deposition Transcript pg. 25, line 8 through line 15; and Affidavit of Robin M. Powell, ¶¶ 5 through 8, and 16 ).  Such a limited number of showers should preclude summary judgement.  *See* Shotz v. Cates, 256 F.3d 1077, 1080 (11th Cir. 2001) (violation of ADA can occur even where plaintiff is not "completely prevented from enjoying a service, program, or activity"); Bonner v. Lewis, 857 F.2d 559, 563-564 (9th Cir. 1988) (claim by deaf mute prisoner that communication by means of telecommunication device and inmate interpreters was "extremely difficult and inadequate" sufficed for RA claim); and Schmidt v. Odell, 64 F.Supp.2d 1014, 1033 (D. Kansas 1999) ("fact that plaintiff was actually able to use most of the jail services does not preclude his [ADA and RA] claim in light of the fact he was able to do so only by virtue of exceptional and painful exertion which was contrary to a physician's instructions").

**B.    The record evidence established that the Defendant was required to make complaints to obtain access to these limited handicapped accessible showers**

The plaintiff made numerous complaints about the lack of handicapped showering facilities. On January 9, 2001, the plaintiff filed an incident report regarding unsafe showering facilities (See: January 9, 2001 Inmate Request),  and on February 6, 2001, the plaintiff filed a grievance form asserting that his rights as a handicapped person were being violated because of the lack of

handicapped accessible showers. (See: February 6, 2001 Grievance Form). The plaintiff also made numerous verbal complaints about the lack of accessible showers, but was discouraged and intimated from pursuing such complaints by some of the defendants' correctional officers. The plaintiff was informed that he was a trouble maker, that he complained too much about being a handicapped person and that such complaints weren't permitted in the pod. (See: Plaintiff Deposition Transcript pg. 38, line 17 through pg. 39, line 9) The plaintiff also alleges that he was denied access to writing instruments so as to prevent him from documenting his complaints. (See: Plaintiff Deposition Transcript pg. 39, line 15 through pg. 40, line 22, and pg. 42, line 5 through 9).

After complaining directly to Sheriff Ashe about the lack of handicapped showers in the "A" unit on January 10, 2001, the plaintiff was transferred to the "C" unit on the same day. (See: Affidavit of Robin M. Powers ¶¶ 5,6). In the "C" unit the plaintiff was locked down tewnty-four hours a day, seven days a week. He was denied all privileges including visitations, telephone calls, access to the day room, access to socialize with inmates and access to a television set. (See: Plaintiff Deposition Transcript pg. 26, line 8 through line 20, and pg. 89, line 24 through pg. 91, line 20). The plaintiff considered the transfer to "C" unit as punishment for his complaint (See: Plaintiff Deposition Transcript pg. 96, line 18 through pg. 21), rather than a legitimate and reasonable accommodations for his disability. At the plaintiff's request he was returned to the "A" unit on January 12, 2005 (See: Exhibit 2, Affidavit of Robin M. Powers, ¶ 8).

9

**C.    The record evidence and the reasonable inferences to be drawn therefrom evidence that the defendants prevented the plaintiff from access to handicapped accessible showers**

There is substantial evidence to support the plaintiff's claims that the defendants blocked his access to handicapped accessible showers. First, in order to obtain access to the very limited number of accessible showers provided, the plaintiff was required to engage extraordinary self-advocacy. The plaintiff was required to make two (2) written grievances and numerous verbal complaints before being permitted to shower safely in the medical unit.

More importantly, the record evidence is clear that the defendants were the parties responsible for stopping the reasonable accommodation of showing in the medical unit. The plaintiff explains:

> Q. (by Mr. McDonough): You say that the use of the showers in the Medical was only for a week?
> A. (by plaintiff) Mmm-hmm.
> Q. You need to say yes or no.
> A. Yes.
> Q. Why did it end after a week?
> A. They felt that –
> Q. (Interposing) Who is "they"?
> A. The medical staff said that the – the head of the nurses said that they couldn't have me go up there every day for my entire stay. I talked with Captain Walker about it and he said he would see what he could do because he knew that I needed a handicapped shower.

Plaintiff Deposition Transcript pg. 64, line 7 through 20 ...

> Q. Someone at the medical staff, you said the head nurse?
> A. One of the head nurses up there.
> Q. Do you know who it was?

10

    A. I don't know the names.

    Q. She said that you couldn't come up there every day, you're telling me?

    A. It was only for a week that I could use the showers, they said, because they could find other avenues for me to shower – which never happened.

Plaintiff Deposition Transcript pg. 65, line 12 through 22.

The record evidence establishes that the plaintiff sought access to safe, handicapped accessible shower facilities during his incarceration. The evidence also shows that he was only provided a total of 29 showers in accessible facilities during his 141 days of incarceration.

The record further establishes that it was the defendants which blocked access to reasonable showering accommodations. The plaintiff was required to verbalize and memorialize numerous complaints before any access was provided. Even then, access was provided only for a limited time.

The denial of the plaintiff of safe, accessible and constantly available showering facilities violated the defendant's rights under state and federal law. The defendant's motion for summary judgement should be denied.

December 11, 2005

Respectfully Submitted
WARREN PARTELOW
By his attorney,

Alfred P. Chamberland
BBO#: 564151
9 Campus Lane -- PO Box 217
Easthampton, MA 01027-0217
(413) 529 - 0404

11

## CERTIFICATE OF SERVICE

I, Alfred P. Chamberland, hereby certify that the above document was provided to the Defendant's Counsel of Record via First Class US Mail, post pre-paid on December 12, 2005.

Edward J. McDonough, Jr., Esquire
Egan, Flanagan and Cohen, P.C.
67 Market Street - PO Box 9035
Springfield, MA 01102-9035

_/s/ Alfred P. Chamberland_
Alfred P. Chamberland

12