UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
CIVIL ACTION NUMBER: 03-30294-MAP

WARREN PARTELOW,
PLAINTIFF
V.
COMMONWEALTH OF MASSACHUSETTS,
HAMPDEN COUNTY CORRECTIONAL CENTER,
MICHAEL ASHE JR., SHERIFF OF HAMPDEN COUNTY;
THOMAS CONKLIN, SUPERINTENDENT OF HEALTH SERVICES OF
HAMPDEN COUNTY CORRECTIONAL CENTER, CPT. WALKER,
CPT. SADDI, AND CERTAIN JOHN DOES,
DEFENDANTS

### DEFENDANTS' SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT.

At the Court's request made on November 21st at the conclusion of oral argument, the defendants submit this supplemental memorandum.

1. **Plaintiff's ADA and RA Claims Necessarily Fail As A Consequence of His Own Demand to be Transferred Back to B Tower Where He Knew the Showers Were Under Construction. Plaintiff Had No Right to Demand a Transfer Out of C Tower Where the Showers Were Fully Accessible, and Expose Himself the Very Conditions of Which Plaintiff Now Complains.**

The gravamen of plaintiff's suit is his unhappiness at being housed in C Tower because he did not enjoy the more restricted environment in C Tower,[1] even though plaintiff knew that the showers were handicap accessible. Plaintiff <u>elected</u> to go back to B Tower where he knew the

---

[1] The claims made at oral argument that inmates housed in C Tower were subjected to harsh conditions, including solitary confinement, are unsupported in the record. On the contrary, the record shows that plaintiff was "<u>moved to C3 w/all C3 privileges.</u>" App 337. Thereafter the records show that the plaintiff "<u>state[d] he did not want to stay ... in C3 if he gets non-contact visit. Rather stay in Davis [A] one.</u>" App 337. The records further note that on January 11, 2001, "<u>[a]fter speaking with Lt. Cadigan at 2:45 P.M. inmate Partelow will be moved to C-4 this evening and will have contact visits.</u>" App. 338. Thus, counsel's representations to the court on this point are contradicted by the record.

showers were still under renovation and not yet handicap accessible. Plaintiff's discrimination claim is that even though he -- and not the defendants -- made the election to go back to B Tower, the defendant -- and not the plaintiff -- are responsible for failing to provide him accessible showers under the ADA and the RA. It is clear that if the plaintiff had not requested that he be sent back to B Tower, the defendants had an absolute right to keep plaintiff in C Tower to accomplish the goal of accommodating the plaintiff's request for a handicap accessible shower. By providing the plaintiff with accessible showers in C Tower, unquestionably, defendants fulfilled their obligation under the ADA and RA. Plaintiff has made no complaint about the condition of the showers in that unit. Plaintiff's use of the showers in B Tower was his own choosing -- not the defendants'. Defendants cannot be held liable under the ADA and RA if it is undisputed that the plaintiff's exposure to the subject non-compliant showers was due to plaintiff's actions alone. Plaintiff may have had a right under the ADA to a handicap accessible shower but he did not have a right to such a shower in the particular housing unit of his choice.

Prison officials have unfettered discretion to transfer inmates, thus, absent plaintiff's request to go back to B Tower (where he knew the showers were still under construction) defendants could have kept plaintiff in C Tower (in order to provide him with the requested shower facilities) even if plaintiff was not pleased with the C Tower living conditions. In <u>Hastings v. Commissioner of Correction</u>, 424 Mass. 46, 52, 674 N.E.2d 221 (1997), where six inmates sued because they were transferred by the Commissioner of Corrections out of prerelease facilities to a more secure prison setting (MCI Concord), the Supreme Judicial Court held that "[a] prisoner cannot harbor a reasonable expectation of remaining at a particular prison, <u>or in a particular custodial setting</u>, so long as prison officials retain discretion to transfer him `<u>for whatever reason</u> or <u>for no reason at all</u>.'

Meachum v. Fano, 427 U.S. 215, 228, 96 S.Ct. 2532, 2540 (1976). See Lanier v. Fair, 876 F.2d 243, 247 (1st Cir.1989)." [2]

The Supreme Judicial Court relied on the First Circuit's decision in Dominique v. Weld, 73 F.3d 1156, 1160-1161 (1st Cir.1996) (transfer of a prisoner in good standing in a work release program to a medium security setting (MCI Shirley) did not constitute an atypical, significant deprivation giving rise to a liberty interest protected by the due process clause).

There are simply no due process rights under either the Federal or the State constitutions which are implicated by the transfer of a prisoner within the facility or from one facility to another, Hastings v. Commissioner of Correction, 424 Mass. 46, 52, 674 N.E.2d 221 (1997); Abdullah v. Secretary of Pub. Safety, 42 Mass.App.Ct. 387, 393, 677 N.E.2d 689 (1997). Accordingly, because the plaintiff had no right to be transferred back to B Tower -- <u>where he knew the showers were still under renovation</u> -- he has no claims to present to a jury arising out of his falls which he claims were caused by his use of the showers in B Tower.

---

[2]

In Hastings, the commissioner's transfer order was upheld by the Supreme Judicial Court against constitutional attack even though prison classification board members determined at classification hearings that the inmates should be returned to minimum security status. 424 Mass at 48. Thus, plaintiff cannot ground his claim on state regulations concerning classification procedures. That type of due process claim is foreclosed by the decisions in Sandin v. Conner, 515 U.S. 472, 115 S.Ct. 2293 (1995), and Dominique v. Weld, 73 F.3d 1156 (1st Cir.1996). In the Sandin case, the United States Supreme Court expressed concern about its former doctrine, under which courts examined the language in State statutes and regulations to determine whether a liberty interest was created. The doctrine, according to the Court, "encouraged prisoners to comb regulations in search of mandatory language on which to base entitlements to various state-conferred privileges." 115 S.Ct. at 2299. In the Court's view, this approach to inmate litigation created disincentives to the codification of prison management rules and procedures and involved the courts in excessive day-to-day management of prisons. Id.

3

2. **Plaintiff Has Not Refuted Nurse Kathy Wyler's Affidavit That Plaintiff Was Never Prohibited From Showering in the Medical Area.**

Summary judgment is also warranted because plaintiff failed to refute nurse Kathy Wyler's affidavit (App. 285) -- filed four months ago on August 17, 2005 -- that plaintiff was <u>never</u> prohibited from showering in the medical area. Nurse Wyler was charged with the personal responsibility of supervising the plaintiff's showers while he resided in A Tower and B Tower. Plaintiff admits showering in the medical area but vaguely claimed in his deposition (page 65) that he was only allowed to shower there "for a week." This general statement is not supported in the record, and cannot defeat summary judgment. Nurse Wyler's affidavit confirms – with corroborating documentation -- that plaintiff took 23 showers from January 13 to February 16, 2001, and states flatly that he was <u>never</u> denied a shower in medical, and that as the person in charge of this special arrangement, that it is "<u>inconceivable</u>" that plaintiff or anyone else would not have notified her otherwise. See App. 287, Wyler Affidavit. Plaintiff's non-specific, general denial on this point will not allow him to meet his "burden of producing specific facts sufficient to deflect the swing of the summary judgment scythe." <u>Mulvihill v. Top-Flite Golf Co.</u>, 335 F.3d 15, 19 (1st Cir.2003). The non-moving party bears the burden of placing at least one material fact into dispute after the moving party shows the absence of any disputed material fact. <u>Mendes v. Medtronic, Inc.</u>, 18 F.3d 13, 15 (1st Cir.1994) (discussing <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). Mere allegations or conjecture unsupported in the record are insufficient to raise a genuine issue of material fact. <u>Horta v. Sullivan</u>, 4 F.3d 2, 8 (1st Cir.1993). Absent a genuine dispute of material fact, questions of law are appropriate for resolution by the court. See <u>Jimenez v. Peninsular & Oriental Steam Navigation Co.</u>, 974 F.2d 221, 223 (1st Cir.1992).

Thus, plaintiff's choice not to avail himself of the handicap accessible showers in the medical unit is akin to his voluntary choice to forgo the handicap accessible showers in C Tower, thereby defeating his ADA and RA claims.

3.  **The Plaintiff's ADA and RA Claims for Damages are Barred by Eleventh Amendment Immunity.**

In passing the ADA, Congress did not intend to abrogate state sovereign immunity. See Cochran v. Pinchak, 401 F.3d 184, 193 (3d Cir.2005) (holding that ADA did not validly abrogate state's immunity for monetary claims brought by inmates under the ADA); Miller v. King, 384 F.3d 1248, 1275-76 (11th Cir.2004) (same). Cochran was decided after Tennessee v. Lane, 541 U.S. 509, 124 S.Ct. 1978, 158 L.Ed.2d 820 (2004) where the Supreme Court held that Title II of the ADA prohibiting discrimination by a public entity, validly abrogated Eleventh Amendment immunity through enforcement of the Fourteenth Amendment, as applied to cases implicating the fundamental right of access to the courts. Plaintiff's claims have nothing to do with access to the courts, so Lane does not aid the plaintiff's case.[3]

4.  **Garcia v. Essex County Sheriff's Department (2005) Does Not Alter The Requirement That Plaintiff Serve On The Attorney General His Notice Of Claim Under Chapter 258.**

At oral argument, both the court and counsel for the plaintiff raised the issue of whether the

---

[3] This court's decision in Mitchell v. Massachusetts Department of Correction 190 F.Supp.2d 204 (D. Mass. 2002)(Prisoner's action against corrections defendants pursuant to Title II of the ADA and the RA claiming that he was denied the opportunity to participate in certain inmate programs during his incarceration based upon the fact that he suffered from diabetes and a heart condition not barred by eleventh amendment) should not control as it was decided before the Supreme Court's decision in Tennessee v. Lane, 541 U.S. 509, 124 S.Ct. 1978, 158 L.Ed.2d 820 (2004), and Cochran v. Pinchak, 401 F.3d 184, 193 (3d Cir.2005) (holding that ADA did not validly abrogate state's immunity for monetary claims brought by inmates under the ADA); Miller v. King, 384 F.3d 1248, 1275-76 (11th Cir.2004) (same).

Massachusetts Appeals Court's recent decision in the <u>Garcia v. Essex County Sheriff Department</u>, 65 Mass.App.Ct. 104, 108 (2005) defeats the defendants' argument that plaintiff's tort claims under Chapter 258 are barred due to plaintiff's failure to serve proper notice on the Attorney General. A careful examination of <u>Garcia</u>, the language of Section 4 of Chapter 258, and the existing case law makes clear that <u>Garcia</u> has no such effect. The language in <u>Garcia</u>, which prompted this question, is as follows: "In this case, it <u>agreed</u> that Sheriff Frank Cousins was the executive officer and was the appropriate person to notify [under G.L. c. 258, §4]." (emphasis added) It is clear from the wording of that sentence, and the context in which it appears, that the issue of who was the appropriate person to notify was not a defense raised by the Essex Sheriff, nor was any dispute on that question ever presented to either the Superior or Appeals Court. At issue in <u>Garcia</u> was the content of the notice and whether or not notice to the sheriff's attorney was sufficient notice to the sheriff, assuming all along that the sheriff was the proper party to be served under §4. Ruling against the plaintiff on both issues, the Appeals Court in <u>Garcia</u> held that the notice to the sheriff's attorney was not sufficient, and that the content of the notice failed "to precisely identify the legal basis for the claim" and was "thus inadequate to fulfil the statutory purpose of the presentment requirement." <u>Garcia</u>, 65 Mass.App.Ct. at 110. Although the Essex Sheriff prevailed in <u>Garcia</u>, for the reasons stated above, it is clear also that he would have prevailed if he had asserted the defense that the plaintiff failed to present his notice to the Attorney General, as required under §4.[4] Thus, the provocative language in <u>Garcia</u> does not even rise to the level of obiter dictum. Because the parties in

---

[4]

It is plain from the language of <u>Garcia</u> that this defense was never raised. The undersigned contacted Attorney William P. Breen, Jr., who represented the Essex Sheriff and authorized the undersigned to represent to the court that this defense was never raised in the case.

6

Garcia had "agreed" on the issue (65 Mass.App.Ct. at 108) that agreement cannot operate to bind Sheriff Ashe, nor to eviscerate the plain language of §4 and the settled precedent on issue. In fact, the Garcia court acknowledged the precedent of Baptiste v. Sheriff of Bristol County, 35 Mass.App.Ct. 119, 127 (1993), which held that the presentment of a tort claim against a sheriff was required to be made to his employer, in that case, the county commissioners. The abolition of county government in both Essex and Hampden County resulted in the sheriffs becoming employees of the Commonwealth, rather than of county commissioners. See G.L. c. 34B, §§1, 12. As an employee of the Commonwealth, §4 of c. 258 plainly requires that notice of tort claims be presented to the Attorney General. This is so because of the plain language of §4, which provides:

> A civil action shall not be instituted against a public employer on a claim for damages under this chapter unless the claimant shall have first presented his claim in writing to the executive officer of such public employer within two years after the date upon which the cause of action arose, and such claim shall have been finally denied by such executive officer in writing and sent by certified or registered mail, or as otherwise provided by this section. ...
>
> Notwithstanding the provisions of the preceding paragraph, in the case of a city or town, presentment of a claim pursuant to this section shall be deemed sufficient if presented to any of the following: mayor, city manager, town manager, corporation counsel, city solicitor, town counsel, city clerk, town clerk, chairman of the board of selectmen, or executive secretary of the board of selectmen; provided, however, that in the case of the commonwealth, or any department, office, commission, committee, council, board, division, bureau, institution, agency or authority thereof, presentment of a claim pursuant to this section shall be deemed sufficient if presented to the attorney general. (emphasis added)

The term "executive officer of a public employer", is defined in §1 of c 258 as "the secretary of an executive office of the commonwealth, or in the case of an agency not within the executive office, the attorney general; ..." (emphasis added)

Plainly, an elected county sheriff is not within the executive office of the Commonwealth.

7

See, by analogy, Lodge v. District Attorney For Suffolk District, 21 Mass.App.Ct. 277 (1985) ("The office of the district attorney for the Suffolk district clearly is not part of any of the executive offices of the Commonwealth.") On this issue, a nearly perfect analogy may be made between sheriffs and district attorneys. While sheriffs and district attorneys are elected by the constituents of their respective geographic counties, each is a state employee and is a part of state government, not of county government.[5] Further, neither a district attorney nor a sheriff is a secretary of an executive office of the Commonwealth. District attorneys and sheriffs are agencies not within the Executive Office. As such, §4 of c. 258 makes clear that notice of any tort claims directed against them must be made upon the attorney general. In the case of district attorneys, this was thoroughly discussed and decided in Lodge v. District Attorney For Suffolk District, 21 Mass.App.Ct. 277 (1985). In that case, the plaintiff alleged that the district attorney for the Suffolk district and the secretary of human services unlawfully released confidential mental health information of the plaintiff, who had been treated at Bridgewater State Hospital. The plaintiff made notice on the district attorney and on the secretary of human services. While notice given to the secretary of human services on the claim against him was not contested, the district attorney correctly claimed that the claims against him were subject to dismissal because the plaintiff failed to serve the Attorney General. Summary judgment was granted to the district attorney and the Appeals Court affirmed. As in the instant case,

---

[5] See G.L.c. 34B, § 1.Transfer date for abolished counties

"The government of each of the following counties, in this chapter called an "abolished county" is hereby abolished as of the following date, in this chapter called the "transfer date", or on such earlier date 30 days after the commissioner of revenue certifies in writing that the county has failed to make a required payment on an outstanding bond or note: (a) Middlesex county, as of July 11, 1997; (b) Hampden and Worcester counties, as of July 1, 1998; ...." Added by St.1999, c. 127, § 53.

the plaintiff in Lodge argued that notice to the elected official was sufficient even though the elected official was an employee of the Commonwealth. That argument can only succeed if the elected official was part of the "executive offices" of the Commonwealth. Id. at 280. The Appeals Court in Lodge held that:

> "The office of the district attorney for the Suffolk district clearly is not part of any of the executive offices of the Commonwealth. ... The essential inquiry in the case, therefore, becomes whether the office of the district attorney is 'an agency not within the executive office' so as to have required presentment to the attorney general ... or whether the office is more properly characterized as an independent government instrumentality so as to have required presentment under the last clause ... to the district attorney himself as 'the nominal chief executive officer.'
> "We think the office of the district attorney for the Suffolk district is more properly denominated as a state 'agency' for the purpose of presentment under G.L. c. 258, §4."
>
> Lodge, 21 Mass.App.Ct. at 282. (emphasis added)

In holding that the Attorney General was the proper party to receive notices of tort claims against as local district attorney under Chapter 258, the Appeals Court in Lodge identified a number of factors which apply with equal force in the case of county sheriffs. The court dismissed as insignificant the fact that district attorneys are elected by the voters of a particular district. The Appeal Court held that "nothing can turn on" this fact. Id. at footnote 9. The court correctly noted that the terms "public employer" and "executive officer of a public employer," as defined in c. 258 "attach no significance to the difference between elected and appointed public officers and employees" citing Pruner v. Clerk of the Superior Court, 382 Mass. 309, 314-315 (1981). The Lodge court also took special note of the fact that the "attorney general is also to advise a district attorney as to the defense of civil actions under the Tort Claims Act." 21 Mass.App.Ct. at 282. The same holds

true for sheriffs.[6] Sheriffs, like district attorneys, are paid by the state as are all their assistants and employees, and must account to the Commonwealth for their expenses and the preparation of a yearly budget. Lodge, 21 Mass.App.Ct. at 283.

Lastly, it is clear that the attorney general is the correct person for presentment given that he is clearly in a position to accomplish the purposes of investigation and settlement of legal claims brought against the Commonwealth. In so stating in the case of a district attorney, the Appeals Court in Lodge stated:

> "Finally, designating the Attorney General as the proper person for presentment comports with the purposes of the presentment requirement. Presentment ensures that the responsible public official receives notice of the claim so that official can investigate to determine whether or not a claim is valid, preclude payment of inflated or non-meritorious claims, settle valid claims expeditiously, and take steps to ensure that future claims will not be brought in the future. See Weaver v. Commonwealth, 387 Mass. 43, 47-48 (1982)."
>
> The attorney general is clearly in a position to accomplish these purposes. He has the investigatory power and resources to determine the validity of a claim against a district attorney. In his role as counsel for a district attorney, the attorney general can independently determine whether the public interest would be served by settlement of the claim. Working with a district attorney, the attorney general can also recommend, and if need be, implement or assist in implementing, changes or procedures necessary to prevent future claims. Recognizing that no sharp criteria can be formulated to settle all questions about the proper officer for presentment, we think the circumstances described above make the attorney general the proper party for presentment of a claim against a district attorney under c. 258, §4."
>
> Lodge, 21 Mass.App.Ct., 283-284. (emphasis added)

Applying the Lodge criteria to the instant case, there is no reason to conclude otherwise in the case of a sheriff. The agreement reached between the parties in Garcia v. Essex County Sheriff's Department in no way reduces the force of Lodge. Thus, plaintiff's failure to give statutory notice

---

[6]The Attorney General has authorized the undersigned to represent the Sheriff of Hampden County as a Special Assistant Attorney General. See Exhibit 1 attached.

to the attorney general dooms his tort claims against the Commonwealth.

## Conclusion.

For these reasons and those set forth in the defendants' original motion, the defendants' motion for summary judgment must be allowed.

The Defendants

By: _____

Edward J. McDonough, Jr.
Egan, Flanagan and Cohen, P.C.
67 Market St. PO Box 9035 Springfield MA
01102-9035 (413) 737-0260  Fax (413) 737-0121  BBO 331590

_____ certifies that copies of this were served on all parties by mail - fax and on 12/12 2005.