UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

WARREN PARTELOW,                )
        PLAINTIFF               )
                                )
        v.                      ) CIVIL ACTION NO. 03-30294-MAP
                                )
COMMONWEALTH OF                 )
MASSACHUSETTS, ET AL.,          )
        DEFENDANTS              )


MEMORANDUM REGARDING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT
(Dkt. No. 13)

June 23, 2006

PONSOR, D.J.


I. INTRODUCTION

    Plaintiff Warren Partelow contends that Defendants --
the Commonwealth of Massachusetts, the Hampden County
Correctional Center, Sheriff Michael Ashe, Jr., Dr. Thomas
Conklin, Captain Walker, Captain Saddi,[1] and certain John
Does -- violated his federal and state civil rights, the
Americans with Disability Act ("ADA"), 42 U.S.C. §§ 12101
et. seq., the Rehabilitation Act of 1973 ("RA"), 29 U.S.C.
§§ 706, 791-794, Mass. Gen. Laws ch. 272, § 98, and Article

───────────────

    [1] The spelling of this Defendant's name is not altogether
clear.  (Compare Dkt. No. 1, Pl.'s Compl. ¶ 31 (alleging
misconduct on part of "Captain Saddi"), with Dkt. No. 3, Defs.'
Answer 1 (refering to Defendant as "Captain Steve Sadi"), and
Dkt. No. 13., Defs.' Mot. Summ. J. 20 (citing allegation
against "Captain Sady").)  Absent a motion to amend the caption
of the case, the court will use the spelling in the caption,
i.e., "Saddi."

114 of the Amendments to the Massachusetts Constitution, and are liable for negligence, intentional infliction of emotional distress, and negligent infliction of emotional distress, due to their failure to provide him with handicapped accessible shower facilities during his 2001 incarceration.  Defendants deny Plaintiff's allegations and have moved for summary judgment.

On March 31, 2006, the court allowed Defendants' motion for the reasons outlined below.

## II. <u>FACTS</u>

The following facts are set forth in the light most favorable to Plaintiff, the non-moving party.  <u>See</u> <u>Calero-Cerezo v. U.S. Dep't of Justice</u>, 355 F.3d 6, 12 (1st Cir. 2004) (citation omitted).  Plaintiff is a left leg amputee, who began serving a nine-month sentence at Defendants' facility on January 2, 2001.  At that time, Plaintiff had an infection on his stump that did not permit him to wear a prosthesis.  (<u>See</u> Dkt. No. 14, Ex. 6, Partelow Dep. 13:24-14:3, Nov. 16, 2004 ("I explained to them about [how] I couldn't wear [my prosthetic] because [my stump] was too swollen . . . .").)[2]  Consequently, Plaintiff was forced

_____

[2] In his Local Rule 56.1 statement of facts, Plaintiff maintains that he

was denied the use of adaptive equipment that would have allowed him more mobility and greater

2

to use a wheelchair for the majority of his incarceration.[3]

    After spending three days in the "new man" unit, Plaintiff was transferred to Pod A-1 on January 5, 2001. (Id. at 24:15-18; Dkt. No. 16, Ex. 2, Powell Aff. ¶ 4.) During his first two days in this housing unit, Plaintiff requested and received additional pillows to elevate his left leg (Dkt. No. 14, Ex. 1, Hampden County Medical Records of Warren Partelow 67, 143) and gloves to wear while using his wheelchair (id. at 66, 144).  When the handicap

---

      independence.  Specifically, [he] was denied the use
      of a "shrinker" device[, which] . . . would have
      allowed [Plaintiff] to wear his prosthetic leg
      despite suffering swelling. [Plaintiff] was also
      directly denied the use of his prosthetic leg . . .
      because he could use it as a weapon.

(Dkt. No. 16, Pl.'s Mem. Opp'n Defs.' Mot. Summ. J. 3 (citing Partelow Dep. 14:11-18:22); see also Partelow Dep. 15:7-17 (describing a "shrinker" as a stocking used to reduce swelling in his stump).)

    However, during his deposition, Plaintiff testified that medical staff members "were good" and gave him his prosthetic "once [he] was healed up."  (Partelow Dep. 13:21-22, 14:2-3.)  Plaintiff's allegation that Defendants denied him adaptive equipment is also inconsistent with Defendants' medical records.  For example, when Plaintiff sought a shrinker from the medical unit on February 12, 2001, he was told that there were not any available, but that he could get one from home. (Dkt. No. 14, Ex. 1, Hampden County Medical Records of Warren Partelow 175 (noting Plaintiff's dissatisfaction with the shrinker from home); see also id. at 182 (documenting effort to obtain shrinker for Plaintiff).)

    [3] According to Defendants' medical records, Plaintiff was fitted for crutches in conjunction with a court appearance on January 30, 2001 (id. at 170), and instructed to use the crutches from February 14, 2001 to March 14, 2001 for medical reasons (id. at 61, 178).

accessible shower in Pod A-1 became unavailable due to renovations, Plaintiff complained and was given a plastic chair so he could sit down while he showered in a separate unit lacking the accommodations of a typical handicap accessible shower.  (Partelow Dep. 22:12-23; id. at 61:6-7.)

On January 9, 2001, Plaintiff submitted a written request to speak with Sheriff Ashe concerning the lack of handrails in Pod-A shower stalls.  (Partelow Dep., Defs.' Ex. 12.)  The following day, Plaintiff informed Sheriff Ashe that he had recently fallen twice while showering.  (Dkt. No. 16, Pl.'s Opp'n Defs.' Mot. Summ. J. 5 (citing Powell Aff. ¶¶ 5, 6).)[4]  In response, Sheriff Ashe assured Plaintiff that the showers in the housing units were being retrofitted in compliance with ADA requirements.  (Partelow Dep. 29:23-24.)  During the encounter, Plaintiff concedes that Sheriff Ashe treated him with dignity and respect.  (Id. at 56:12-18.)

Later that same day, Plaintiff spoke with Captain Murphy, who arranged for Plaintiff to be transferred to Pod

---

[4] During his deposition, Plaintiff testified that he sought medical attention each time he fell.  (Partelow Dep. 83:5-84:10.)  However, his Rule 56.1 statement does not dispute Defendants' contention that Plaintiff "failed to report these alleged falls on the dates and times they are alleged to have occurred."  (Dkt. No. 13, Defs.' Mot. Summ. J. 4.)  See Local Rule 56.1 ("Material facts of record set forth in the statement required to be served by the moving party will be deemed for purposes of the motion to be admitted by the opposing parties unless controverted by the statement required to be served by opposing parties.").

C-3, a maximum security area with handicap accessible showers. (Id. at 88:24-90:4.) Upon arriving in Pod C-3, Plaintiff learned that although he would have a handicap accessible shower in that unit, he would lose certain privileges not available in Pod C-3, including visits, telephone calls, and access to a day room, as well as opportunities to watch television and socialize with other inmates. (Id. at 72:1-73:5, 90:11-91:7; see also id. at 97:7-10 (acknowledging that nobody in Pod C had such privileges).) In light of these limitations, Plaintiff did not perceive his transfer to Pod C-3 as a reasonable accommodation for his disability, but saw it instead as punishment for his complaints. (Id. at 96:18-21.)

At his request, Plaintiff was transferred back to Pod A on January 12, 2001,[5] only two days after arriving in Pod C-3, despite the fact that the shower stalls in Pod A were still under renovation. (Powell Aff. ¶ 8.) Upon his return, Plaintiff was permitted to use the handicap accessible shower in the medical unit, which he did thirteen times from January 13, 2001 to January 29, 2001. (Powell Aff. ¶¶ 9, 16.)

On January 30, 2001, Defendants transferred Plaintiff to

---

[5] On that same day, Defendants assented to Plaintiff's request for a new wheelchair. (Hampden County Medical Records 65, 151.)

Pod C-4, where he had access to a handicap accessible
shower, and the following day, Defendants moved him to Pod
B-2. (Powell Aff. ¶¶ 10, 11.) At some point during his
stay in Pod B-2, Plaintiff claims to have sought a transfer
to the medical unit, but was told by a guard named "Bigelow"
that he "complained too much about being a handicapped
person." (Partelow Dep. 38:7-19 (noting that Bigelow also
called Plaintiff a "troublemaker").) In response to his
subsequent request for a complaint form, Plaintiff alleges
that Bigelow "said no. . . . [W]e don't do that in this
pod." (Id. at 39:5.) According to Plaintiff, after two or
three other guards also refused to provide him with paper or
a writing implement,[6] he spoke with Captain Saddi, who
summarily rejected Plaintiff's request for a medical unit
transfer. (Id. at 40:2-8, 40:17-22.)

On January 31, 2001 and February 1, 2001, Plaintiff's
first two days in Pod B-2, he showered at the medical unit.
(Powell Aff. ¶ 16.) However, on February 6, 2001, Plaintiff
submitted an inmate grievance form, implying that his access
to the medical unit shower had been denied and blaming the
lack of a handicap accessible shower in Pod B-2 for a recent

---

[6] In addition, Plaintiff claims that his counselor refused
to help him document his complaint. (Partelow Dep. 41:8-22;
but see id. at 45:14-46:14 (acknowledging, however, that he did
not ask his counselor for paper or seek paper when he went to
the library or church services).)

fall.  (Partelow Dep., Defs.' Ex. 11.)

The following day, Assistant Superintendent Robin Powell and Dr. Conklin determined that Plaintiff should be allowed to shower at the medical unit during the Pod B-2 shower renovations.  (Powell Aff. ¶ 13.)  On February 8, 2001, after coordinating this accommodation with Clinical Nurse Specialist Kathleen Wyler, Powell replied in writing to Plaintiff's grievance, informing him that he would have access to the medical unit shower and apologizing for any inconvenience due to the renovations.  (Powell Aff. at ¶¶ 14, 15; Dkt. No. 14, Ex. 8, Wyler Aff. ¶ 5.)

From February 9, 2001 to February 16, 2001, Plaintiff showered at the medical unit on a daily basis.  During his deposition, Plaintiff testified that, after this week of showering in the medical unit, "the head of the nurses said that they couldn't have [him] go up there every day for [his] entire stay."  (Partelow Dep. 64:7-17; see also id. at 65:19-22 ("It was only for a week that I could use the showers, they said, because they could find other avenues for me to shower -- which never happened.").)  However, in opposing Defendants' motion for summary judgment, Plaintiff merely notes that there is no record of him showering in the medical unit from February 17, 2001 until his release on May 22, 2001.  (Pl.'s Mem. Opp'n Defs.' Mot. Summ. J. 6

7

(citations omitted)).  Given the centrality of this issue to
Plaintiff's case -- during this period, he claims to have
fallen in "regular" showers on several occasions and
contends that each fall caused him severe pain (Partelow
Dep. 22:9-12) -- this equivocation is rather baffling.

On December 2, 2003, Plaintiff filed a ten-count
verified complaint alleging: "Violation of 42 U.S.C. Section
1201 et al [sic] (Americans with Disabilities Act)" (Count
I); "Violation of 29 U.S.C. § 701, et seq (Rehabilitation
Act of 1973 - Title V)" (Count II); "Violation of M.G.L. c.
272 § 98 (Handicapped Discrimination)" (Count III);
"Violation of Article CXIV of the Amendments to the MA
Constitution (Discrimination)" (Count IV); "Violation of
Massachusetts General Laws Chapter 12, § 111 (Massachusetts
Civil Rights Act)" (Count V); "Violation of 42 U.S.C.,
Sections 1981, 1983 and 1988 (Federal Civil Rights
Violations)" (Count VI); "Violation of 42 U.S.C., §§ 1985(c)
and 1986 (Neglecting to Prevent Acts Wrongful under § 1985)"
(Count VII); "Intentional Infliction of Emotional Distress"
(Count VIII); "Negligent Infliction of Emotional Distress"
(Count IX); and "Negligence" (Count X).

### III. STANDARD OF REVIEW

Summary judgment is proper when "the pleadings,
depositions, answers to interrogatories, and admissions on

file, together with the affidavits, if any, show that there
is no genuine issue as to any material fact and that the
moving party is entitled to judgment as a matter of law."
Fed. R. Civ. P. 56(c).  Establishing the existence of a
genuine issue requires "more than simply show[ing] that
there is some metaphysical doubt as to the material facts."
Nat'l Amusements, Inc. v. Town of Dedham, 43 F.3d 731, 735
(1st Cir. 1995), cert. denied, 515 U.S. 1103 (1995),
(quoting Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio
Corp., 475 U.S. 574, 586 (1986)).  Instead, the nonmoving
party must present "enough competent evidence" to permit a
rational trier of fact to find in his favor.  Forestier
Fradera v. Municipality of Mayaguez, 440 F.3d 17, 21 (1st
Cir. 2006) (citations omitted).

     As the First Circuit has frequently noted, "evidence
illustrating the factual controversy cannot be conjectural
or problematic; it must have substance in the sense that it
limns differing versions of the truth which a factfinder
must resolve."  I.V. Servs. of Am., Inc. v. Inn Dev. &
Mgmt., Inc., 182 F.3d 51, 56 (1st Cir. 1999) (quoting Mack
v. Great Atl. & Pac. Tea Co., 871 F.2d 179, 181 (1st Cir.
1989)); see also Crawford v. Lamantia, 34 F.3d 28, 31 (1st
Cir. 1994), cert. denied, 514 U.S. 1032 (1995), rehr'g
denied, 514 U.S. 1124 (1995), ("[N]either conclusory

allegations, improbable inferences, and unsupported
speculation, nor brash conjecture coupled with earnest hope
that something concrete will materialize, is sufficient to
block summary judgment." (internal quotation marks and
citations omitted)).

IV. <u>PLAINTIFF'S FEDERAL LAW CLAIMS</u>

A.    <u>Counts I and II: ADA and RA Claims</u>.

The ADA and the RA both proscribe discrimination in the
provision of public services.  Section 504 of the RA
provides, in relevant part: "No otherwise qualified
individual with a disability . . . shall, solely by reason
of her or his disability, be excluded from the participation
in, be denied the benefits of, or be subjected to
discrimination under any program or activity receiving
Federal financial assistance . . . ."  29 U.S.C. § 794(a)
(2006).

Similarly, Title II of the ADA declares that "no
qualified individual with a disability shall, by reason of
such disability, be excluded from participation in or be
denied the benefits of the services, programs, or activities
of a public entity, or be subjected to discrimination by any
such entity."  42 U.S.C. § 12132 (2006); <u>see also</u> <u>Theriault</u>
<u>v. Flynn</u>, 162 F.3d 46, 48 n.3 (1st Cir. 1998) (noting that
"Title II of the ADA was expressly modeled after Section 504

10

of the Rehabilitation Act" (citations omitted)).

While the ADA and RA obviously are not identical,[7] their points of departure have no bearing in the present case;[8] consequently, the court will address the merits of Plaintiff's ADA and RA claims simultaneously. See Parker v. Universidad de P.R., 225 F.3d 1, 4 (1st Cir. 2000) ("In applying Title II, . . . we rely interchangeably on decisional law applying § 504."); see also Jones v. City of Monroe, MI, 341 F.3d 474, 477 n.3 (6th Cir. 2003) (finding "a separate analysis of [Plaintiff's] Section 504 claim . . . unnecessary" (citation omitted); Rodriguez v. City of N.Y., 197 F.3d 611, 618 (2d Cir. 1999), cert. denied, 531 U.S. 864 (2000), (considering ADA and RA claims "in tandem"); Zukle v. Regents of Univ. of Cal., 166 F.3d 1041, 1045 (9th Cir. 1999) (same).

Pursuant to these statutes, a plaintiff must show: "(1)

---

[7] See Parker v. Universidad de P.R., 225 F.3d 1, 4 n.2 (1st Cir. 2000) ("Title II [of the ADA] essentially extends the reach of § 504 [of the Rehabilitation Act] to state and local governmental entities that do not receive federal financial assistance." (citation omitted)); see also Powell v. City of Pittsfield, 221 F. Supp. 2d 119, 148-49 (D. Mass. 2002), aff'd, 391 F.3d 1 (2004), (noting that while the ADA does not require a plaintiff to show discrimination "solely by reason of his or her disability," the First Circuit has used a "sole causation test" in analyzing a claim under section 504 of the RA (citing Lesley v. Hee Man Chie, 250 F.3d 47, 53 (1st Cir. 2001))).

[8] Defendants have not raised the issue of federal funding, and Plaintiff does not claim to have suffered discrimination for any reason other than his disability.

11

that he is a qualified individual with a disability; (2) that he was . . . excluded from participation in . . . a public entity's services, programs, or activities or was otherwise discriminated against; and (3) that such exclusion . . . or discrimination was by reason of [his] disability." Parker, 225 F.3d at 5.

In this case, Defendants neither contest Plaintiff's status as a qualified individual with a disability nor his assertion that showers are a "service" covered by the statutes.[9]  Instead, they submit that Plaintiff has not established a prima facie case that he was denied access to a handicap accessible shower or a reasonable accommodation[10] during his 2001 incarceration.[11]

---

[9] To the extent that Defendants' alleged (in)action prevented Plaintiff from showering safely, "it is self-evident that it did so 'by reason of' his disability." Parker, 225 F.3d at 5.

[10] As the Ninth Circuit recently noted, "[a]lthough Title II of the ADA uses the term 'reasonable modification,' rather than 'reasonable accommodation,' these terms create identical standards." McGary v. City of Portland, 386 F.3d 1259, 1266 n.3 (9th Cir. 2004) (citation omitted); see also H.R. Rep. No. 101-485, at 50, 51 (1990) (explaining that the employment-related requirement to provide reasonable accommodation contained in the regulations implementing § 504 applies to the ADA's prohibition against public services discrimination).

[11] Defendants alternatively argue that Plaintiff's RA and ADA claims are barred by Eleventh Amendment immunity.  Having concluded that Defendants did not violate Title II, the court need not reach this argument.

While federal regulations implementing the ADA require public entities to "maintain in operable working condition those features of facilities and equipment that are required to be readily accessible to and usable by persons with disabilities," 28 C.F.R. § 35.133(a), this requirement "does not prohibit isolated or temporary interruptions in service or access due to maintenance or repairs," 28 C.F.R. § 35.133(b); see also Forestier Fradera, 440 F.3d at 22 (finding no liability under the ADA for delay in installation of elevator due to "the inevitable complications arising from a major, publicly funded construction project on a historic building"). In such cases, a public entity may fulfill its obligation to persons with disabilities "through such means as . . . delivery of services at alternate accessible sites . . . or any other methods that result in making its services . . . readily accessible to and usable by individuals with disabilities." 28 C.F.R. § 35.150(b)(1).[12]

------

[12] Defendants argue that Plaintiff's complaint "must be viewed in light of the fact that he was at the time an inmate." (Defs.' Mot. Summ. J. 10-11.) They cite cases from the Seventh, Ninth, and Eleventh Circuits, as well as the Massachusetts Supreme Judicial Court, for the proposition that "courts must be mindful of the necessary balance between the ADA's worthy goal of integration and a prison's unique need for security, safety, and other penological concerns." Miller v. King, 384 F.3d 1248, 1266 (11th Cir. 2004), vacated, No. 02-13348, 2006 WL 1330874 (11th Cir. May 17, 2006); see also Crawford v. Ind. Dep't of Corrs., 115 F.3d 481, 487 (7th Cir.

The record confirms that this is precisely what Defendants did.  Among other things, they provided Plaintiff with a chair for use in the shower, assigned him to a housing unit with handicap accessible showers, promptly transferred him back to his original housing unit at his request,[13] and ultimately made arrangements for him to shower

---

1997), abrogated on other grounds by Erickson v. Bd. of Governors of State Colls. & Univs. for Ne. Ill. Univ., 207 F.3d 945 (7th Cir. 2000); Gates v. Rowland, 39 F.3d 1439, 1446-47 (9th Cir. 1994); Shedlock v. Dep't of Corr., 442 Mass. 844, 855-56 (2004).

Absent any instruction from the First Circuit to view ADA and RA claims from prisoners in a different light, this court is reluctant to do so.  See Bartolomeo v. Plymouth County House of Corrs., No. 99-1621, 2000 WL 1164261, at *3 n.3 (1st Cir. Aug. 16, 2000) (unpublished decision) (calling "the manner in which the ADA is to be applied in the prison context" a "matter[] that remain[s] unsettled").  Yet even assuming, arguendo, that "legitimate penological concerns" should be taken into account when applying the ADA and RA in the prison context, Defendants cite no evidence that any action taken regarding Plaintiff stemmed from a desire to maintain the order or security of the institution.

Accordingly, any "special deference for prison security concerns . . . is not warranted here."  Purcell v. Pa. Dep't of Corrs., No. CIV. A. 95-6720, 1998 WL 10236, at *8 (E.D. Pa. Jan. 9, 1998).

[13] Defendants take the position that Plaintiff "had no right to be transferred back to B tower." (Dkt. No. 20, Defs.' Supplemental Br. Supp. Mot. Summ. J. 3.)  This argument overlooks Department of Justice regulations, which "make it quite clear that a public entity is not empowered to require a person to accept any particular accommodations." Blatch ex rel. Clay v. Hernandez, 360 F. Supp. 2d 595, 634 (S.D.N.Y. 2005) (citing 28 C.F.R. § 35.130(e)(1)); see also Olmstead v. L.C. ex rel. Zimring, 527 U.S. 581, 602 (1999) ("[P]ersons with disabilities must be provided the option of declining to accept a particular accommodation." (quoting 28 CFR pt. 35, App. A, p. 450 (1998))).

Of course, when a plaintiff exercises his statutory right

in the medical unit.[14]

Plaintiff's argument that the absence of any record that he showered at the medical unit during the final ninety-five days of his incarceration undercuts Defendants' position will not withstand scrutiny. While Plaintiff, as the non-moving party, "is entitled to the benefit of all reasonably drawn inferences," I.V. Servs. of Am., 182 F.3d at 55 (citation omitted), the inference he seeks in this instance, i.e., that he lacked access to a properly equipped shower, is far from reasonable.

The record before the court "shows that every accommodation [P]laintiff asked for was granted," Forestier Fradera, 440 F.3d at 23, including extra pillows, gloves, a new wheelchair, and crutches for court. The deficiencies of Plaintiff's claim of disability-based discrimination are

---

to refuse an accommodation, a defendant may point to that refusal in rebutting the plaintiff's ADA or RA claims. See Messier v. Southbury Training Sch., No. 3:94-CV-1706(EBB), 1999 WL 20910, at *10 (D. Conn. Jan. 5, 1999).

[14] According to Plaintiff, each accommodation he received was the product of "extraordinary self-advocacy." (Pl.'s Supplemental Mem. 10 (noting that Plaintiff had "to make two (2) written grievances and numerous verbal complaints before being permitted to shower safely in the medical unit").) But see Calero-Cerezo v. U.S. Dep't of Justice, 355 F.3d 6, 24 (1st Cir. 2004) (observing that reasonable accommodations often require "a great deal of communication" (citations omitted)); Criado v. IBM Corp., 145 F.3d 437, 444 (1st Cir. 1998) ("[B]oth parties bear responsibility for determining what accommodation is necessary." (citation omitted)).

further borne out by the inconsistency of Plaintiff's
contentions regarding the conduct of medical unit personnel.
After Plaintiff testified that the "head of the nurses"
terminated his access to the medical unit shower,
Defendants, in moving for summary judgment, submitted the
affidavit of Kathleen Wyler.  As the individual charged with
coordinating Plaintiff's medical unit showers, Wyler stated
that she "never refused [Plaintiff's] requests for showers,"
and that Plaintiff "never complained to [her] about his
shower arrangement and never advised [her] that any one
interfered with or prohibited him from showering in Health
Services."  (Wyler Aff. ¶¶ 5, 8-10 (calling it
"inconceivable" that such an interference or prohibition
could have occurred without her notification).)

     As previously noted, Plaintiff's Rule 56.1 statement not
only fails to address Wyler's assertions; it does not
affirmatively state that Defendants ever blocked his access
to a reasonable shower accommodation.  While Plaintiff does
reprise his complaint about the head nurse in a more recent
submission (Dkt. No. 19, Pl.'s Supplemental Mem. 10-11
(citing Partelow Dep. 64:7-20, 65:12-22)), he makes no
effort to reconcile this charge with his praise of the
medical staff, in general (see Partelow Dep. 53:9-10 ("I had
no complaints about the medical staff); id. at 51:20 ("The

nurses were good.")), or Nurse Wyler, in particular (id. at 79:17-22 (acknowledging that Wyler treated him with dignity and respect)).

"Given the tenuous [and equivocal] nature of [Plaintiff's] evidence and the stronger competing evidence," Rosenfeld v. Egy, 346 F.3d 11, 17 (1st Cir. 2003), the court concludes that submitting this issue to a jury would amount to "nothing more than an invitation to speculate," Feliciano de la Cruz v. El Conquistador Resort & Country Club, 218 F.3d 1, 9 (1st Cir. 2000) (quoting Lattimore v. Polaroid Corp., 99 F.3d 456, 467-68 (1st Cir. 1996)).

In summary, there is insufficient evidence to establish a genuine dispute as to a material fact on Plaintiff's ADA and RA claims.  Because no reasonable factfinder could conclude that Defendants' conduct deprived Plaintiff of his rights under these statutes, the court allowed Defendants' motion for summary judgment on Counts One and Two.

B.    Count VI: Violation of Federal Civil Rights

In Count VI, Plaintiff alleges two classes of misconduct cognizable under 42 U.S.C. § 1983.[15]  First, he asserts that Defendants' failure to provide him with consistent access to

---

[15] Count VI also alleges violations actionable pursuant to 42 U.S.C. §§ 1981 and 1988.  The court need not engage in any extended discussion regarding these provisions as Plaintiff has abandoned his § 1981 claim, and § 1988 is inapplicable absent a successful § 1983 action.

17

handicap accessible showers ran afoul of the Eighth
Amendment's prohibition of cruel and unusual punishment.
Second, Plaintiff contends that Defendants punished him for
exercising his First Amendment right to file grievances.
The Court shall address each of these claims in turn.

     1.  <u>Deliberate Indifference</u>.

     In order to survive a motion for summary judgment, a
plaintiff alleging an Eighth Amendment violation must
satisfy two requirements.  First, he must demonstrate that,
"from an objective standpoint, the conditions of his
confinement den[ied] him the minimal measure of necessities
required for civilized living." <u>Surprenant v. Rivas</u>, 424
F.3d 5, 18 (1st Cir. 2005) (citing <u>Farmer v. Brennan</u>, 511
U.S. 825, 834 (1994)).  Second, the plaintiff must establish
"that prison officials possessed a sufficiently culpable
state of mind, namely one of 'deliberate indifference' to
[his] health or safety." <u>Burrell v. Hampshire County</u>, 307
F.3d 1, 8 (1st Cir. 2002) (citing <u>Farmer</u>, 511 U.S. at 834).

     In this case, Plaintiff's proof falls short on both
requirements.  While reasonable access to safe bathing does
constitute a component of civilized living, the record fails
to support any conclusion that he lacked such access  To
the extent that some impediment or delay occurred in
Plaintiff's access, or that the equipment in the showers

18

were sometimes, due to the ongoing renovations, less than ideal, these difficulties could not be found on this record to reflect a culpable state of mind, or deliberate indifference.  Indeed, Plaintiff repeatedly acknowledged that prison personnel treated him with "dignity and respect."  (See, e.g., Partelow Dep. 99:22-100:10.)

In short, because nothing in the record supports a finding of uncivilized conditions or deliberate indifference, the court allowed summary judgment on Plaintiff's Eighth Amendment claim.

2.  Retaliation.

To prevail on a retaliation claim, an inmate must establish that (1) he engaged in constitutionally protected conduct, (2) prison officials took an adverse action against him (3) with the intent to retaliate against him for engaging in the constitutionally protected conduct, and (4) he would not have suffered the adverse action "but for" the prison officials' retaliatory motive. Morris v. Powell, No. 05-40578, 2006 WL 1314329, at *1 (5th Cir. May 15, 2006); see also McDonald v. Hall, 610 F.2d 16, 18 (1st Cir. 1979)).

In support of his retaliation allegation, Plaintiff cites two distinct actions: Defendants' refusal to provide him with writing implements and their decision to transfer him to a maximum security housing unit where his privileges

19

were significantly curtailed.  As will be shown, neither assertion is sufficient to forestall summary judgment.

<u>Denial of Writing Implements</u>.

While the record clearly indicates that Plaintiff exercised his constitutional right to file grievances under established prison procedures, <u>see</u> <u>Shabazz v. Cole</u>, 69 F. Supp. 2d 177, 197 (D. Mass. 1999) (citing <u>Colon v. Coughlin</u>, 58 F.3d 865, 872 (2d Cir. 1995), there is scant evidence in support of Plaintiff's claim that Defendants ever prevented him from doing so.  In fact, the sum and substance of such evidence is Plaintiff's testimony, during his deposition, that several guards refused to provide him with a pen and paper.  <u>Cf.</u> <u>Plaza-Torres v. Rey</u>, 376 F. Supp. 2d 171, 185 (D.P.R. 2005) (finding plaintiff's deposition testimony, "[w]ithout more," insufficient to establish <u>prima facie</u> case of retaliation).  A mere lack of cooperation on the part of some guards, causing a brief, transitory delay in Plaintiff's submissions of grievances does not support a claim for retaliation.

During his deposition, Plaintiff also suggested that in denying him access to writing implements, Pod B correctional officers effectively foreclosed his ability to lodge complaints.  This contention is inconsistent with Plaintiff's testimony that he subsequently aired his

grievance to Captain Saddi in person and that he was later
given paperwork by a Pod B guard when he says his access to
the medical unit shower suddenly stopped.  (Partelow Dep.
66:7-20.)  Plaintiff's comments concerning the impact of the
alleged denial of paper also neglect to account for his
failure to seek writing materials from his counselor or the
Legal Resource Department.  Assuming <u>arguendo</u> that certain
Pod B guards did deny Plaintiff's requests for paper, the
fact that Plaintiff could have obtained paper from sources
outside Pod B implicates the Supreme Court's observation
that there is "a <u>de minimis</u> level of imposition with which
the Constitution is not concerned." <u>Bell v. Wolfish</u>, 441
U.S. 520, 539 n.21 (1979) (citation omitted).

<u>Transfer to Pod C-3</u>.

Although prison officials ordinarily have "extremely
broad" discretion to transfer prisoners, they may not
transfer an inmate in retaliation for his exercise of a
constitutional right. <u>McDonald</u>, 610 F.2d at 18; <u>see also</u>
<u>Shaheed-Muhammad v. Dipaolo</u>, 138 F. Supp. 2d 99, 105 n.18
(D. Mass. 2001) ("Otherwise constitutional conduct may be
actionable if taken to discipline someone for exercising
their constitutionally protected rights." (citing <u>Ferranti</u>
<u>v. Moran</u>, 618 F.2d 888, 892 n.4 (1st Cir. 1980))).

As noted earlier, it is undisputed that Plaintiff

21

engaged in constitutionally protected conduct.  However, even if one assumes that Plaintiff's transfer to Pod C-3 constituted an adverse action,[16] no reasonable juror could conclude that, in effecting this transfer, Defendants harbored a retaliatory motive.

Plaintiff points to the fact that this transfer occurred immediately after his conversation with the Sheriff as evidence of retaliation.  However, "[t]he mere chronology alleged in the complaint, while sufficient to withstand a motion to dismiss, cannot get plaintiff to the jury once defendants have produced evidence of a legitimate reason." Layne v. Vinzant, 657 F.2d 468, 476 (1st Cir. 1981).  In this case, the record not only reveals a legitimate reason for Plaintiff's transfer, i.e., an effort to accommodate Plaintiff's disability; it shows that Defendants engaged in this effort in good faith by promptly returning Plaintiff to Pod A upon his request.

Plaintiff's only other evidence in support of his retaliation claim is his own testimony that an unnamed guard told him to "enjoy the showers" as he left for the maximum security unit.  (Partelow Dep. 63:24-64:4.)  This ambiguous

---

[16] See Morris v. Powell, No. 05-40578, 2006 WL 1314329, at *5 (5th Cir. May 15, 2006) ("[T]ransfer to a more dangerous section of the same prison is a sufficiently adverse retaliatory act to support a § 1983 claim." (citation omitted)).

evidentiary fragment is insufficient to counterbalance the overwhelming evidence demonstrating that Plaintiff was transferred as an accommodation and returned as soon as he requested.

In conclusion, the court finds that Plaintiff has failed to satisfy the requisite elements of any claim under § 1983. Accordingly, it allowed Defendants' motion for summary judgment on Count VI of his complaint.

C.    Count VII: Neglecting to Prevent Wrongful Acts.

Count VII alleges violations of 42 U.S.C. §§ 1985 and 1986.  Given Plaintiff's failure to adduce any evidence of a conspiracy, as required under § 1985, let alone a "class-based, invidiously discriminatory animus behind the conspirators' action," Hahn v. Sargent, 523 F.2d 461, 468 (1st Cir. 1975), cert. denied, 425 U.S. 904 (1976), the court allowed Defendant's motion for summary judgment on this count of Plaintiff's complaint.[17]  See also Kermit Const. Corp. v. Banco Credito Y Ahorro Ponceno, 547 F.2d 1, 3 (1st Cir. 1976) ("If § 1985 does not apply, any claim under § 1986 must also fall." (citation omitted)).

## V. PLAINTIFF'S STATE LAW CLAIMS

As previously noted, Plaintiff also contends that

---

[17]    Indeed, aside from citing these provisions in a subheading of his initial brief, Plaintiff appears to have altogether abandoned his § 1985 and § 1986 claims.

Defendants violated Mass. Gen. Laws ch. 272, § 98 (Count
III), Article 114 of the Amendments to the Massachusetts
Constitution (Count IV), and Mass. Gen. Laws ch. 12, § 111
(Count V), and are liable for the common law torts of
intentional infliction of emotional distress (Count VIII),
negligent infliction of emotional distress (Count IX), and
negligence (Count X). Having allowed Defendants' motion for
summary judgment on Plaintiff's federal claims, the court
must now consider whether to retain jurisdiction over these
state law claims.

Federal courts exercising original jurisdiction over
federal claims also have "supplemental jurisdiction over all
other claims that are so related to the claims in the action
within such original jurisdiction that they form part of the
same case or controversy under Article III of the United
States Constitution." 28 U.S.C. § 1367(a) (2006). If,
however, a federal district court grants summary judgment on
a plaintiff's federal claims, "it must reassess its
jurisdiction, this time engaging in a pragmatic and
case-specific evaluation of a variety of considerations that
may bear on the issue." Camelio v. Am. Fed'n, 137 F.3d 666,
672 (1st Cir. 1998) (citing Roche v. John Hancock Mut. Life
Ins. Co., 81 F.3d 249, 256-57 (1st Cir. 1996)).

As the First Circuit has observed, a federal court

24

should be especially cautious about exercising supplemental jurisdiction "when the state law that undergirds the nonfederal claim is of dubious scope and application." Rodriguez v. Doral Mortgage Corp., 57 F.3d 1168, 1177 (1st Cir. 1995).

Because the question of whether Plaintiff fulfilled the presentment requirement of Mass. Gen. Laws ch. 258, § 5 raises a "complex issue of State law," 28 U.S.C. § 1367(c)(1), the court chose not to exercise supplemental jurisdiction over Plaintiff's state law claims. See United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726 (1966) ("Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law.").

### VI. CONCLUSION

For the reasons stated above, on March 31, 2006, this court allowed Defendants' motion for summary judgment with respect to Counts One, Two, Six, and Seven, and dismissed Counts Three, Four, Five, Eight, Nine, and Ten, without prejudice to refiling in state court. The clerk is ordered to enter judgment for Defendants on all counts. This case may now be closed.

It is So Ordered.

25

_/s/ Michael A. Ponsor_
MICHAEL A. PONSOR
U. S. District Judge